ELEANOR WATERMAN *et al. vs.* NICHOLAS SHELDON WATERMAN, JR.

NOVEMBER 24, 1961.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J. This bill in equity was brought to enjoin the respondent from interfering with the use by the complainants of a right of way over certain lands located on the east shore of the Seaconnet River in the town of Tiverton. The cause was heard by a justice of the superior court who thereafter entered a decree denying and dismissing the bill of complaint. From that decree the complainants have prosecuted this appeal.

The land over which the right of way here being considered was granted was, at the turn of the century, part of a thirty-acre farm owned by Amanda R. Grinnell. The farm, abutting on the westerly side of Puncatest Neck Road, extended to the shore of the Seaconnet River, hereinafter sometimes referred to as the river. That part of the right of way which complainants contend has been obstructed by respondent's erection of a fence thereon lies within a portion of the farm that had been sold in 1905 by Mrs. Grinnell to Fred E. Waterman.

It appears from the record that Mrs. Grinnell had conveyed a portion of the farm which comprised the northwest corner thereof to James W. Bence, a part thereof being conveyed in 1900 and the remaining part in 1905. In the two conveyances above referred to, a right of way to the properties purchased by Bence was granted in identical language as follows: "Together with a right of way from the Puncatest Neck Road to the Seaconnet River and Northerly along the edge of the bank over the cart path now in use." The land thus conveyed to Bence is now owned by Mrs. Alice S. Buffington.

In December 1905 and a few days after Mrs. Grinnell had made the second conveyance to Bence, she sold to Fred E. Waterman a portion of the farm that abutted on the shore of the river and lay to the south of the Bence land. In this conveyance a right of way to provide access to the parcel sold was granted in slightly different terms from the right of way granted to Bence. The language of the grant here was: "* * * together with a right of way from the Puncatest Neck Road to the Seaconnet River over the cart path now in use and along the edge of the bank to the property herein described." In the habendum clause of the deed she warranted that the premises conveyed were free from all encumbrances "except a right of way along the cart path and edge of the bank to the premises of James W. Bence."

In June 1907 Mrs. Grinnell made a further conveyance to Fred E. Waterman of the land lying to the east of both the Bence and Waterman purchases, which is referred to as "back land." It does not appear that this conveyance contained any grant of a right of way. By virtue of these conveyances Fred E. Waterman became the owner of an L-shaped parcel of land which lay to the south and east of the Bence land. Hereinafter the right of way granted to Bence and Waterman will be referred to as the Grinnell right of way.

In 1954 the Fred E. Waterman land, on the petition of his heirs, was partitioned by a decree of the superior court. The court-appointed commissioner filed his report, recommending therein that the land be divided into three lots. Two of these lots, designated as parcels "A" and "B" on a plat attached to the report, abutted on the river. The third parcel, designated as "C" on the commissioner's plat, comprised the back land, so called. The report also provided a right of way across parcel B to the shore of the river as an easement of way appurtenant to parcel C. This way consisted of a ten-foot strip of parcel B abutting the southerly boundary thereof. Another easement appurtenant to parcel C was also provided in the beach to the west of parcel B. A decree was properly entered authorizing the commissioner to convey these parcels to the heirs of Fred E. Waterman designated in the report.

These parcels were conveyed to the designated heirs by commissioner's deeds, each of which was dated July 16, 1954. Parcel A, after a series of conveyances, was conveyed to Isis O. Waterman, the mother of the present complainants, who now holds title thereto. Parcel B was conveyed subject to the easements created therein in favor of parcel C to one of the Waterman heirs, who in turn conveyed it to his son Nicholas Sheldon Waterman, Jr., who now holds title thereto and is the respondent in the instant suit. Parcel C, conveyed to one of the Waterman heirs, after a subsequent conveyance was conveyed to Eleanor Waterman and to Dorothy Waterman Fell, who now hold title thereto and are the complainants in the instant suit.

It is not disputed that in order to pass from Puncatest Neck Road to parcel C, complainants must pass along the Grinnell right of way to the point where it intersects with the commissioner's right of way end, thence turning easterly, proceed along the latter right of way to their land. The instant litigation follows a long controversy as to the location of the precise point of intersection of the Grinnell

right of way with the commissioner's right of way. Despite the confused state of the evidence, it appears that the cart path, upon which was imposed the Grinnell right of way from Puncatest Neck Road, reaches the edge of the bank at some unspecified point south of the southerly line of parcel A and, then turning in a northerly direction, runs across both parcels A and B to the Buffington land.

It is the contention of complainants that these ways intersect at a point in parcel B where the southerly line of that parcel meets the bank of the river. In other words, they contend that the cart path crosses the property line between parcels A and B and intersects the commissioner's right of way literally at the edge of the bank. According to the evidence adduced on complainants' behalf, in passing along the cart path to proceed to parcel C, they will reach its intersection with the commissioner's right of way at the edge of the river bank where, turning east, they pass between the southerly side of respondent's house and the south line of respondent's property as they proceed along the commissioner's right of way easterly to parcel C.

The respondent, on the other hand, argues that the cart path did not proceed in a northerly direction literally along the edge of the river bank as it crossed the Waterman property, or what are now parcels A and B, going to the Buffington property. Rather respondent urges that the cart path entered into that part of the Waterman property which is now parcel A at the edge of the river bank but then turned in a general northeasterly direction and, crossing what is now parcel A, reached the line between parcels A and B some distance east of the edge of the bank. It then, according to respondent, turned to the north and crossed parcel B to the Buffington property. In other words, respondent's testimony places the point at which the Grinnell right of way intersects the commissioner's right of way at a point on his southerly property line some sixty to seventy feet east of the edge of the bank. It is respondent's view that .

vehicles which use the Grinnell right of way in proceeding to the Buffington property pass to the rear of his house on parcel B.

In July 1960 respondent erected a fence along the property line between his land and the land constituting parcel A. This fence begins at the edge of the river bank on that line and extends easterly to an opening therein which respondent testified "spanned the ruts" of a roadway, which he contends is the Grinnell right of way, at the point where it enters his property. According to respondent's testimony, this opening is from thirty to forty feet wide and is about sixty to seventy feet east of the edge of the bank.

It is not disputed that the Grinnell deeds to Bence and Waterman granted as appurtenant to the lands therein conveyed a right of way from the Puncatest Neck Road to those lands over and along a cart path then in use. However, complainants are contending that where an easement of way is conferred by an express grant in a written instrument, the nature and extent thereof is to be determined by construing the language employed in the grant and therefore the trial justice erred in considering oral testimony on that issue.

The complainants' contention flows from an apparent misconception of the applicable rule of law. It is true that where in a written instrument an easement of way is granted in express terms, the nature and extent of the easement thus established is to be determined primarily from the language used in the writing, and if the terms thereof are free from uncertainty and ambiguity, oral testimony is not admissible to explain the nature or extent of the easement granted. *Chase* v. *Cram,* 39 R. I. 83, 92. See *Picerne* v. *Botvin,* 76 R. I. 422, 427. However, this court has repeatedly taken the sound view that when the language employed in the grant of the easement is ambiguous or uncertain, it may properly resort to a consideration of "any concomitant circumstances which have a legitimate tendency

to show the intention of the parties." *Gonsalves* v. *Da-Silva*, 76 R. I. 474, 477; *First Baptist Society* v. *Wetherell*, 34 R. I. 155.

But in the instant case it does not appear that the trial justice considered the oral testimony for the purpose of ascertaining the extent of the easement under consideration. He appears rather to have assumed that the grantor in each of the conveyances intended to grant a right of way over and along the cart path then in use, and his consideration of the oral testimony was limited to establishing the location of that cart path. We are unable to say that this was an unwarranted conclusion.

In each of the pertinent deeds the grantor conveyed an easement of way "over the cart path now in use." In the habendum clause of the first deed to Fred E. Waterman it is revealed that the land now constituting parcels A and B was conveyed to him subject to a right of way "along the cart path and edge of the bank to the premises of James W. Bence." The clear implication of this exception in the habendum clause is that the cart path that constituted the right of way to the Bence property, at the time it was established, crossed the land being conveyed to Fred E. Waterman at the edge of the bank.

The entitlement to the injunctive relief sought by complainants turns on the precise location of the cart path over which the right of way was granted. There is no certainty as to where it was located at the time of the establishment of the easement and the trial justice was warranted, in our opinion, in concluding that the phrase "edge of the bank" was ambiguous. The oral testimony adduced related in large measure to the use of the right of way by the owners of the dominant lands during the period from the early twenties to the present time. This is the testimony upon which the trial justice relied in finding that for almost thirty-five years the owners of the dominant properties crossed parcel B at the present location of the rutted road

and to the rear of the house on parcel B now occupied by respondent. On the basis of this evidence he concluded that the cart path contemplated by the grantor as the situs of the right of way did not enter parcel B at the edge of the bank but at a point some sixty to seventy feet east of the bank.

We are of the opinion that the oral evidence here adduced was properly considered in determining the location of the cart path over which the right of way was granted. It is well settled in this state that when the place of an easement of way is doubtful or uncertain, the location thereof may be established by oral evidence relating to the circumstances which surrounded the establishment of the easement and the subsequent conduct of the parties concerning the use thereof. In *Matteodo* v. *Capaldi,* 48 R. I. 312, this court at page 314 thereof, in referring to a right of way granted in a conveyance, said: "The way is neither defined nor is its use limited. In order, therefore, to ascertain the intention of the parties we must consider the physical facts and circumstances existing at the time of the grant and the subsequent use of the way by the parties." See *Chenevert* v. *Larame,* 42 R. I. 426, 430. There is, in our opinion, no sound reason for precluding a similar resort to parol evidence to determine the location of a right of way granted in a written instrument in express but ambiguous terms, it being clear that such evidence is offered not to alter the meaning of the instrument but to explain it.

It is well settled that this court will not disturb the decision of a trial justice of the superior court sitting in equity unless it appears to be clearly wrong or fails to do justice between the parties. *McDonough* v. *McDonough,* 88 R. I. 243, 146 A.2d 234. There is in the instant case an abundance of evidence tending to prove that for some thirty-five years past the owners of the dominant tenements exercised the right of way appurtenant thereto by following the rutted way that turned away from the edge of the bank as

it entered what is now parcel A, entering and crossing parcel B some sixty to seventy feet east of the edge of the bank.

We do not perceive that the trial justice either overlooked or misconceived any of the testimony adduced by the complainants to prove that the cart path contemplated by the grantor crossed parcels A and B literally at the edge of the bank. It appears rather that he rejected such testimony as being without substantial probative force. In that circumstance we cannot say that the trial justice was clearly wrong in finding that the fence erected by the respondent does not obstruct the Grinnell right of way or that he erred in denying the injunctive relief herein prayed.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

FROST, J., did not participate in the decision.

*John C. Burke*, Newport, for complainants.

*Paul M. Chappell*, Portsmouth, for respondent.