[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION Introduction
Pasquisett Pond is a small, fresh water pond near which substantial development has occurred. However, despite the presence of a Boy Scout camp, a commercial inn and restaurant as well as several waterfront homes, the pond exudes a calm and peaceful effect. In stark contrast to the bucolic tranquility of Pasquisett Pond is the instant litigation involving two easements over land now owned by the Defendants Hanslin.
The pertinent history with respect to this litigation begins in 1931 at which time the Rhode Island Boy Scouts received title to a one-half acre parcel of waterfront property. Individuals associated with the Boy Scouts, including witnesses in this trial, began to develop this parcel, sometimes referred to as the "Panhandle", in 1932. Because the Boy Scout parcel was landlocked, the Boy Scouts obtained permission to construct a rough, dirt road over the land of a neighbor. The road provided access to their parcel for the delivery of construction materials and, thereafter, campers and others who would utilize the site which came to be called "Camp Richard."
As it approaches the vicinity of the pond, the dirt road lies roughly in an east-west direction up to the western boundary of the 1931 parcel. That dirt road became known as "Pioneer Road." Until the 1990's, access to the pond using Pioneer Road was by crossing the Boy Scout property which had been partially cleared. (See Exhibit 4). The Boy Scouts continued to use the dirt road for access to their parcel until at least 1955 when they acquired a contiguous and much larger parcel which provided better access to the Boy Scout property.
Well prior to the arrival of the instant litigants, John Salonen and his wife acquired property adjacent to and south of the Boy Scout's two parcels. Thereafter, the Salonens conveyed various parcels of their land to certain individuals. The deeds which memorialized these conveyances all contained rights-of-way or easements intended to grant to the new title holders access to Pasquisett Pond. It is these easements — which appear in the titles of property owned by Plaintiffs Benjamin Carpenter and Linda Carpenter as well as Lynn Labossiere — that gave rise to this litigation.
This Court notes that the language utilized to express the grant of such easements is less than precise and clearly does not reflect the fact that the so-called "Panhandle" lot owned by the Rhode Island Boy Scouts precludes access to Pasquisett Pond from "Pioneer Road" without a substantial detour to the south, (around the "Panhandle.") The reality of this geographical feature was clearly not expressed in the easements. Nor was it likely appreciated by the grantor. (See Exhibits 3 and 4).
It is uncontested that both the Carpenters and Lynn Labossiere were conveyed easements in their titles. Thus, when Paul and Mirja Hanslin acquired their property from the Salonens, the Plaintiffs were entitled to the deeded easements which are set forth immediately below and which run across that property owned by Defendants Hanslin.
 TOGETHER with a right of way 15 feet in width, across other land of these grantors, in common with others, extending generally easterly along with southerly boundary line of premises of Rhode Island Boy Scouts, Inc. to Pasquisett Pond and also together with the right and privilege to moor or store boats, and bathing privileges, along the shore of said Pond on premises of the Grantors on a strip of land 30 feet in width extending 30 feet southerly, along said Pond, from the southeasterly corner of premises of said Rhode Island Boy Scouts, Inc.
 Also, together with a right of way, in common with others, with vehicles or otherwise, over and across premises of these grantors, commonly known as "Pioneer Road," extending generally southerly from the herein described premises to "Old Indian Trail," so-called, and from thence along said Old Indian Trail to the State Highway.[1]
 The Claims of the Parties
The parties seek, inter alia, a declaratory judgment regarding their respective rights and obligations which arise from the aforementioned express easements or rights-of-way set forth in the deeds held by the Carpenters and Lynn Labossiere. Jurisdiction of this Court is primarily governed by the Rhode Island Uniform Declaratory Judgments Act, 9-30-1, et. seq. and Super. R. Civ. P. 57.
This lawsuit was initiated by Benjamin and Linda Carpenter by way of a Verified Complaint filed on April 10, 2003. Defendants Paul and Mirja Hanslin filed an answer and counterclaim on April 11, 2003. Plaintiffs Carpenter filed a First Amended Complaint on May 20, 2003, and a Second Amended Complaint on June 16, 2003.
On or about January 8, 2004, Plaintiffs Benjamin and Linda Carpenter filed their Third Amended Complaint seeking, interalia, quiet title as to their rights-of-way, an injunction prohibiting both the Rhode Island Boy Scouts and Paul and Mirja Hanslin from interfering with their right to enjoy their rights-of-way, and a declaratory judgment as to: a.) what portions of their rights-of-way can be used by motor vehicles, and b.) the boundaries of a prescriptive easement which they claim to have acquired.
On January 12, 2004 Paul and Mirja Hanslin filed a Third Party Complaint against Lynn Labossiere which sought, inter alia, a permanent injunction prohibiting Labossiere from trespassing on their property by failing to limit her travel and use of her right-of-way to the rights allowed by her deeded rights-of-way. Thereafter, on January 29, 2004, Labossiere filed a counterclaim and cross claim against the Hanslins.
Trial was held without a jury during the period June 29 — July 1, 2004, as to the unresolved claims.[2]
 Facts.
In 1931 the Rhode Island Boy Scouts acquired a one-half acre parcel of waterfront property on Pasquisett Pond.[3]
Through the efforts of the Scout leadership, Camp Richard was built on the parcel in the mid-1930's. Access to this land-locked parcel was by means of a dirt road constructed over real estate later acquired by John Salonen and his wife. Salonen acquiesced to the Scouts use of the dirt path which became known as Pioneer Road.[4]
In 1955 the Scouts acquired a much larger parcel which adjoined the 1931 parcel. A road which was built over the newly acquired parcel provided much more direct access to the camp. Accordingly, after the mid-1950's, the Scouts no longer used Pioneer Road to access Camp Richard. Others, however, continued to use Pioneer Road which ends at the western side of the 1931 parcel (the so-called "Panhandle").[5] This western boundary is nearly 300 feet from the shore of the pond. To prevent the continued trespass of individuals and vehicles seeking access to the pond over their land, the Scouts erected a chain link fence in 1995. From the west, the fence blocked passage to the pond over the Boy Scout land, requiring a substantial detour in a southerly direction around the fence and then easterly to the pond. Such travel, however, was complicated by the presence of trees, underbrush and swamp.
In 1956, the Salonens acquired property to the south of the Boy Scout land Over time, the Salonens conveyed portions of this land to others. The deeds for these lots included easements or rights-of-way. These are the rights-of-way at issue here. The Salonens granted a separate right-of-way to the Narragansett Electric Company and the New England Telephone and Telegraph Company for the maintenance of utility lines and poles. This right-of-way allowed the utilities to use trucks and other mechanized vehicles at least as far east as "pole 1995" which is located within 15 feet of the southern boundary of the "Panhandle." On March 28, 1990, the Carpenters took title to one of the lots to which Salonen had expressly granted the rights-of-way at issue here. Labossiere took title to another parcel of real estate having identical rights-of-way on October 15, 1992.
Paul Hanslin (who later conveyed his property to both his wife and himself) obtained much of Salonen's remaining property in 1982. It is this "Hanslin" property which is the servient estate with regard to the subject rights-of-way.
There can be no doubt based upon the language of the easements and the testimony of Paul Flynn that the grantor of the rights-of-way intended that each grantee (necessarily including the Carpenters and Labossiere) have access to Pasquisett Pond for recreation including bathing and boating. A 30 foot by 30 foot area at water's edge was expressly granted for such purpose. This Court finds that it is also clear, especially in light of the testimony of Paul Flynn, that the grantor intended vehicles to be used for pond access in so far as that was practical. Unfortunately, grantor Salonen did not have a correct understanding as to the location of his property boundary and the rights-of-way he established in reference to the boundary with the Rhode Island Boy Scouts property. Had he, Salonen would have understood that vehicular travel over the entirety of the rights-ofway reflected in the relevant deeds is not possible.
Based upon the evidence at trial there have been only three individuals who have attempted to use the right-of-way for the purpose of launching boats. A predecessor in title to Labossiere apparently found use of the right-of-way for boat launching too difficult and launched his boat from the lawn in front of Salonen's home [now owned by the Hanslins]. Labossiere has apparently dragged a small boat through the brush south of the Panhandle for occasional use. Finally, the Carpenters have expressed an interest in continuing to use the right-of-way for future trips to their boat, now moored near the "point".[6]
While they request an order of this Court declaring their right to use vehicles as far as pole 1995 which is south of the so-called "Panhandle," they apparently recognize that the swampy terrain to the east of pole 1995 would preclude vehicular use of the right-of-way over most of the remaining 200 feet of terrain to the pond.
An understanding of the relevant topography at water's edge is important. The 1931 parcel is near the southwestern corner of Pasquisett Pond. The right-of-way at issue is a corridor 15 feet wide and adjacent to the boundary between the Boy Scout property and that property now owned by the Hanslins. At the edge of the pond, the right-of-way includes the 30 by 30 foot square identified above. However, there is a small stream which flows into the pond just south of the Boy Scout property. And, it is at this point — the south side of the stream — that the shoreline of the pond turns dramatically eastward at a roughly 90 degree angle.
As recently as the 1970's, the stream was about two (2) feet wide at the point where it flowed into the pond. However, in the 1970's, John Salonen substantially dredged the mouth of the stream, creating a small "bay" of the pond at least 20 feet wide. (Exhibit #G). After the Boy Scout authorities ordered Carpenter to move his boat from their property in 2001, the boat has been moored in this "bay". The Hanslins consider this location to be a part of the stream and not part of the pond. This Court disagrees.
Despite the testimony of Benjamin Carpenter that he constructed his boat on the shore of the pond immediately after Hurricane Bob (Hurricane Bob struck New England on August 19, 1990), and the Carpenters' claim of regular vehicular use of portions of the Hanslins' land just south of the Boy Scout property as far as 100 feet to the east of Pole 1995 starting in 1991, this Court finds to the contrary. Deposition testimony (trial exhibits) from John Dolan and Thomas Webster as well as the testimony of Paul and Mirja Hanslin prompts this Court to find that up until 1994, access to the pond by the Carpenters was by means of Pioneer Road and then trespass directly to the east over the Boy Scouts' 1931 parcel along a path roughly indicated by the broken red line which appears on Exhibit #4. It was only after being told not to trespass on the Boy Scout land and the erection of the chain link fence in 1995, that brush cutting by the Carpenters was commenced to the south and east of the chain link fence, along the boundary between the Boy Scout land and that owned by the Hanslins. To the east of utility pole 1995, the Carpenters cut a path back onto Boy Scout property to the pond where they initially moored their boat.
As revealed at trial, the Carpenters first used the pond frontage on Boy Scout property to moor their boat for several years, probably beginning around 1994. Brush and other vegetation in this portion of the Boy Scout parcel prevented caretakers Webster and Dolan from noticing the boat. And because the boat was some distance from their property, the Hanslins had no reason to complain. However, in 2001, Boy Scout authorities advised Carpenter that he was trespassing by mooring his boat off Boy Scout property and demanded its removal. This prompted the Carpenters to move the boat to its present location about 20 feet south of the Boy Scout property line. Despite the fact that the boat is clearly in or adjacent to the 30 foot square provided by the deeded right-ofway, the Hanslins complain that the boat is not moored in the pond. The Hanslins contend that the boat is moored in the "stream". It is agreed that the 2001 ARM survey and the new wire fence running generally in an east-west direction to the south of the "Panhandle" correctly mark the boundary between the Boy Scout land (the 1931 parcel) and the property owned by the Hanslins.[Exhibits #1 and 3].
One portion of the right-of-way granted to the Carpenters and Labossiere is that 15 foot strip of land immediately adjacent to the boundary from the corner of the chain link fence to the pond. The right-of-way likewise should include a 30 by 30 foot area of land at pond's edge. However, at least in current times there is insufficient land to accommodate the grantor's intent. Whether solely because of the actual boundary location which was not accurately determined until 2001 or because of the dredging activity of the so-called stream which was widened in the manner of a bay in the 1970's, there is only approximately 20 linear feet of uneven and swampy land on the north-south shore of the pond before the shoreline indents significantly — the area of the substantially widened stream or bay.
 Conclusion and Rulings of the Court.
After careful consideration of all the evidence presented during trial as well as the applicable law in Rhode Island, the Court hereby reaches the following conclusions:
Prescriptive Easement. One remedy sought by Plaintiffs is the declaration of a prescriptive easement for their benefit.
To acquire a prescriptive easement in Rhode Island, one must show actual, open, notorious, hostile, and continuous use under a claim of right for a period of ten years. See Altieri v.Dolan, 423 A.2d 482, 483 (R.I. 1980); Russo v. Sterns FarmsRealty, 117 R.I. 387, 391, 367 A.2d 714, 716-17 (1977); Foleyv. Lyons, 85 R.I. 86, 90, 125 A.2d 247, 249 (1956); see also
G.L. 1956 (1984 Reenactment) § 34-7-1. The burden is on the party claiming the easement to prove each element by a preponderance of clear and convincing evidence. See Alteri, 423 A.2d at 483;Russo, 117 R.I. at 391, 367 A.2d at 716-17; Sherman v.Goloskie, 95 R.I. 457, 467, 188 A.2d 79, 84 (1963).
 Furthermore, although each element must be established by clear and convincing evidence, * * * `no particular act to establish an intention to claim ownership is required. It is sufficient if one goes upon the land openly and uses it adversely to the true owner, the owner being chargeable with knowledge of what is does openly on his land Reitsma v. Pascoag Reservoir Dam, LLC, 774 A.2d 826, 831-832 (R.I. 2001) (quoting Greenwood v. Rahill, 122 R.I. 759, 763, 412 A.2d 228, 230 (1980)); see also Talbot, 52 R.I. at 286, 160 A. at 469 (explaining that where use "was so [substantial] and * * * so regular and for such a long period of time that any person having a claim of title, if he gave any attention whatever to the matter, would have known the use was hostile and under a claim of right").
A prescription easement, however, may not be established solely by foot traffic. In Palisades Sales Corp. v. Walsh,459 A.2d 933 (R.I. 1983), our high Court cited both G.L. 1956 (1969 Reenactment) § 34-7-4 and Daniels v. Blake, 81 R.I. 103,99 A.2d 7 (1953), for the proposition that "even long continued use by foot passers over the way . . . cannot establish an easement." Id. At 937 n. 8.
Because this Court finds that Plaintiffs have failed to prove by clear and convincing evidence, the required ten years of actual, open, notorious, hostile and continuous use of Defendants Hanslin' property outside their deeded rights-of-way as required by R.I.G.L. 34-7-1, their claim must fail. Despite the testimony of Plaintiffs and others with respect to the use of vehicles to the south of the "Panhandle" from as early as 1990, this Court finds that the evidence to the contrary is more compelling. This Court finds that up until 1994, the Plaintiffs Carpenter gained access to Pasquisett Pond by trespassing across Boy Scout land in roughly an easterly direction from the end of Pioneer Road. It was not until they were told not to trespass over the Boy Scout property in 1994 and the erection of the chain link fence in 1995, that the Carpenters began clearing land to the south of the Panhandle. Accordingly, the claim of a prescriptive easement must fail.
Determination of location of rights of way. Plaintiffs Carpenter request this Court to specify with greater clarity the location of their rights-of-way. In particular, Plaintiffs request that this Court approve their interpretation of their 15 foot right-of-way to mean "close" to the Boy Scout boundary but not necessarily immediately adjacent thereto.
When interpreting a deed, this Court "will consider all of the facts and circumstances existing at the time of its execution * * * and effect will be given to the intention of the parties whenever that intent can be ascertained." Catalano v. Woodward,617 A.2d 1363, 1366 (R.I. 1992), quoting Sullivan Granite Co. v.Vuono, 48 R.I. 292, 294-95, 137 A. 687, 688 (1927).
The Court's duty is to effectuate the intent of the parties in construing instruments purporting to create easements. Mattos v.Seaton, 839 A.2d 553, 557 (R.I. 2004). However "[w]hen the written terms of an agreement are clear and unambiguous, they can be interpreted and applied to the undisputed facts as a matter of law." Id. Additionally, where terms of easement are clear and unambiguous, neither oral testimony nor extrinsic evidence will be received to explain the nature or extent of the rights acquired. Waterman v. Waterman, 93 R.I. 344, 175 A.2d 291
(1961).
"The terms of the grant of an easement are subject to construction in the same manner as are the terms of a deed."Vallone v. City of Cranston Department of Public Works,197 A.2d 310, 316 (1964). And, where the language employed is ambiguous the court may "properly resort to a consideration of `any concomitant circumstances' which have a legitimate tendency to show the intentions of the parties." Waterman,93 R.I. at 348-49, 175 A.2d at 294-95. In addition, the Rhode Island Supreme Court has stated that a right-of-way will be construed in a favor of the grantee, limited only by what is reserved expressly in the instrument and the accompanying circumstances to demonstrate the intent of the parties. Burke-Tarr Co. v. Ferland Corp.,724 A.2d 1014, 1018 (R.I. 1999) citing Gonsalves v. DaSilva,76 R.I. 474, 477, 72 A.2d 227, 229 (1950).
It is well established that where the easement is created by grant and is not limited in its extent or scope by the terms of the grant, it is available for the reasonable uses to which the dominant estate may be denoted. Sharp v. Silva Realty, Inc.,86 R.I. 276, 134 A.2d 131 (1957).
The language of the deed at issue is the wording: ". . . a right of way 15 feet in width, . . . extending generally easterlyalong the southerly boundary line of premises of Rhode Island Boy Scouts, Inc. to Pasquisett Pond. . . ." (emphasis added).
This Court finds unpersuasive Plaintiffs' claim that their deeds' use of the word "along" doesn't mean adjacent but connotes location reasonably nearby the Boy Scouts property line. This Court finds that "along" in this context must refer to a right-of-way parallel to and adjacent to the Boy Scout boundary.See generally, Webster's New Universal Unabridged Dictionary, 2nd Ed.p. 51 (1979). ("Along" defined as "by the side of"). Otherwise Plaintiff's interpretation does not seem to be consistent with the grantor's intent to provide pond access with as little interference to the servient estate as possible. Nor does the unrelated "floating" right-of-way granted to the utility companies directly benefit the Carpenters or Labossiere. See
R.I.G.L Section 34-7-5. The utility companies received a right-of-way in order to enable occasional and necessary maintenance of utility lines. Moreover, this utility company easement is not an easement to provide access to Pasquisett Pond.
Accordingly, the 15 foot easement begins at the terminus of Pioneer Road and continues south and east to Pasquisett Pond, at all times being immediately adjacent to the boundary with property of the Rhode Island Boy Scouts.
Vehicular use including parking. The Carpenters (and presumably Labossiere) seek a declaratory judgment permitting them vehicular use of the right-of-way beyond the end of Pioneer Road. Stated otherwise, they seek judgment that vehicular use is allowed in their 15 foot right-of-way adjacent to the Boy Scout boundary. Clearly, the deeded right-of-way is ambiguous as to what if any vehicular use may be enjoyed. The fact that the utility easement provides for vehicular traffic as far as pole 1995, is of indirect benefit to Plaintiffs. And this Court has found that it was the intent of the grantor to permit vehicular use of the deeded rights-of-way to Pasquisett Pond.[7]
Moreover, the width of the right-of-way evidences the grantors' intent that vehicles be allowed beyond the terminus of Pioneer Road. Vehicular use and travel of the 15 foot right-of-way by grantees shall be permitted even though substantial clearing of trees and vegetation in the right-of-way may be required.
However, as explained above, vehicular travel to pond's edge is impossible because of wetlands which can not be traversed by vehicles.
The fact that utility trucks traverse the Hanslins' land as far as pole 1995 and the grantor's intent provides an ample basis for this Court to find that it is both reasonable and permissible for the grantees to utilize vehicles on their right-of-way around the Panhandle not farther east than pole 1995. It is further reasonable and consistent with the grantor's intent to allow vehicles to be parked in the right-of-way for a reasonable period. See generally, 37A.L.R.2d 944 (1954). Moreover, it is only reasonable that the operators of such vehicles be allowed to safely turn around after passage on the right-of-way as far as pole 1995. Incidental and occasional use of property to the south of the right-of-way to accommodate the safe turning around of vehicles — but not parking, standing, loading or unloading — must be allowed. Given the intent of the grantor, the bucolic nature of the properties in question, and the rights of the servient estate, each of the grantees shall be limited to the use of no more than two vehicles per day within the 15 foot right-of-way. Parking of any vehicle in the 15 foot right-of-way shall not be for more than 12 hours each day.[8]
 Improvements to the right of way. Plaintiffs seek a declaratory judgment that would allow them to construct a boardwalk over the swampy area of their right-of-way to the east of Pole 1995. They recognize that permits will be required from state regulatory agencies and have limited their request to the construction of a boardwalk four (4) feet wide for pedestrian use only.[9] Defendants Hanslin object and claim that as owners of the servient estate, they have no duty to cooperate in the construction of such a boardwalk to which they object regardless of its size and appearance.
The dominant tenant of an easement has a right, if not a duty, to maintain the easement so that it can be used for the purpose for which it was granted. Sharp v. Silva Realty Corp.,86 R.I. 276, 286, 134 A.2d 131, 136 (1957).
 The right of the easement owner and the right of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both. It has been held that the rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil, and it is an established principle that the unrestricted grant of an easement gives the grantee all such rights as are incidental or necessary to the reasonable and proper enjoyment of the easement. (citation omitted). Id.
 Hickey v. Town of Burrillville, 713 A.2d 781, 785 (R.I. 1998)
 It is equally well settled that what is or is not necessary for such reasonable use by the dominant tenement, as well as by the servient tenement, is a question of fact to be determined by the trial justice or jury.
 Sharp v. Silva Realty Corp., 86 R.I. 276, 285 (R.I. 1957).
The general rule is that courts of equity should fashion injunctive relief designed to preserve to the owner of the dominant estate that to which he or she is entitled, and impose upon the servient estate only the burden that was originally contemplated. Frenning v. Dow, 544 A.2d 145 (R.I. 1988). And where a structure is reasonably necessary to the enjoyment of the right granted under a right-of-way, the courts have so construed the grant as to permit its maintenance. See generally,
3 A.L.R.3d 1256, § 9 (1965). For example, it has been held that grantees of the easement of a private roadway could repair or replace an existing bridge at a point where the roadway crossed a stream, and could construct a new bridge at another point where the roadway and stream intersected, where such projects were necessary for reasonable use of the easement granted. Dahlv. Rettig, 506 P.2d 1251 (Colo.Ct.App. 1973)[10]
As discussed above, this Court has found that it was the grantor's intent that the holders of the subject easements be afforded access to Pasquisett Pond for bathing and boating. This Court has further found that it was the grantor's intent that vehicles could be used on the rights-of-way for the purpose of,inter alia, the transporting of boats to water's edge. This is not possible. Accordingly, in order to effectuate as near as possible the grantor's intent, this Court holds it proper, reasonable and appropriate to allow the grantees to make improvements to their easement which is now all but impassable. This Court finds, based upon the trial record and having had the benefit of a view of all pertinent geographical features, that a modestly sized boardwalk no more than two (2) feet above water level and completely within the 15 foot right-of-way seems an appropriate solution. Defendants Hanslin shall not interfere with or file objection to any required permitting process providing the plaintiffs' application permit comports with the guidelines established herein.
The area granted for bathing and the mooring and storage ofboats. At the eastern terminus of the 15 foot wide easement along the boundary of the Boy Scout property is a 30 foot by 30 foot area at the edge of the pond granted for recreational purposes. Such an area no longer exists above water level. This Court finds that the grantor inadvertently destroyed part of the 30 foot by 30 foot recreational area when he dredged the mouth of the stream located immediately to the south of the easement. That dredging created a bay to Pasquisett Pond which may be more than 20 feet wide.[11] Consistent with the grantor's intent, this Court finds it reasonable for grantees to moor boats off of what remains of the 30 foot by 30 foot area, either on the east or on the south. The storage of boats on land shall be confined to what remains of the 30 foot by 30 foot area above pond level. The mooring of boats shall be confined to water immediately adjacent to what remains of the 30 foot by 30 foot parcel.
The issue of costs shall be considered only upon the filing of a separate motion with an accompanying affidavit.
To the extent not expressly ruled on, all other unresolved claims/requests raised in this litigation are denied. Counsel for Plaintiffs shall prepare a form of order consistent with this decision.
[1] There is no need to make extended factual findings regarding the location of Pioneer Road or the grantees' rights with respect to its use. Defendants do not object to vehicular use including parking on Pioneer Road. Defendants contend and this Court finds that the road ends at the western boundary of the Boy Scouts' original parcel.
[2] Before trial judgment was entered in favor of the Rhode Island Boy Scouts. All claims made by the Carpenters relating to the infliction of emotional distress were likewise settled before trial.
[3] The name of the body of water of interest is spelled at various times with both a single and double letter "t". For consistency sake, the Court shall utilize the latter spelling (Pasquisett).
[4] See footnote 1.
[5] It would be illogical that Pioneer Road's eastern terminus be anywhere other than the western boundary of the 1931 parcel in that the road was constructed and initially used for the sole purpose of accessing Camp Richard.
[6] The "point" as used in this litigation refers to a small, swampy area of pond front land immediately to the south of the Boy Scout property. It is all that remains of the 30 foot by 30 foot area granted by easement for the purpose of swimming and boating on Pasquisett Pond.
[7] Our high court has recently observed "we have `repeatedly taken the sound view that when the language employed in the grant of the easement is ambiguous or uncertain, (the court) may properly resort to a consideration of `any concomitant circumstances which have a legitimate tendency to show the intention of the parties.'" (citations omitted). Richards v. Halder, ___ A.2d ___ (R.I. 2004).
[8] The key undertaking in any equity action is the promotion of fairness. Plaintiffs undoubtedly paid a premium for their purchase of their property with deeded rights-of-way to a fresh water pond. This ruling appears a reasonable compromise between the parties' competing interests.
[9] State of Rhode Island Department of Environmental Management regulatory authority over alterations to existing wetlands begins fifty (50) feet to the west of the swampy terrain found in the 15 foot right-of-way leading to the "point." Rule 5.401(A), D.E.M. Rules and Regulations Governing the Administration and Enforcement of the Freshwater Wetlands Act (April 1998) (Wetland Regs.)
[10] However, pursuant to this "reasonable use" doctrine, in another case a master properly concluded that defendants' cutting of trees, against the will of owners of the servient estate, exceeded scope of defendants' right-of-way to a pond, where, after considering surrounding circumstances, the master concluded that defendants simply wished to improve their view of the pond from a windowed addition to their cabin, and the removed trees had not interfered with defendants' use of the right-of-way.Delaney v. Gurrieri, 122 N.H. 819, 451 A.2d 394 (1982).
[11] This Court finds that the grantor's dredging activities formed a bay at the mouth of the subject stream. The bay formed is part of the pond. The presence of slowly moving water in the bay does not preclude this area from being classified as a pond. `"Pond' means a place not less than one-quarter acre in extent, natural or man-made, . . . where open standing or slowly
moving water is present for at least six months a year." R.I.G.L. § 2-1-20 (7).