DECISION
Before this Court are questions involving the existence and location of an easement in favor of the Plaintiff, Rocky David Farm, LLC, over the properties of Fred and Margaret Gail Van Reen and the East Greenwich Land Trust. This Court has equitable jurisdiction pursuant to Rhode Island Gen. Law 1956 § 8-2-13.
 I FACTS TRAVEL
This is truly the case of "The Road Not Taken."[1] Created by deed in 1887, the easement in question fell into nonuse and over time its exact location was lost. During this trial, the Court has literally and figuratively, been taken down two paths through the serene and historic woodlands of the Town of East Greenwich that include the Boesch Farm, circa 1704 and a new home constructed in 2004. Now, 124 years after its creation, this Court is tasked with plotting the easement's location based on language contained in deeds in the chain of title and the testimony of the property owners, title experts, land surveyors, and a self-proclaimed East *Page 2 
Greenwich history expert. Three neighboring property owners — Rocky David Farm, LLC the owner of a parcel which without the easement is landlocked, the East Greenwich Land Trust, owner of the Boesch Farm property, and Fred and Margaret Gail Van Reen owners of two lots with frontage along South Road — contest the existence, scope, and location of this easement.
The following findings of fact are based upon the Court's review of the numerous deeds, surveys and the testimony of the witnesses presented at trial. The Court's interpretation of the evidence is assisted by an extensive view of the properties involved, including walking the specific areas in dispute.
This story begins 124 years ago, in 1887 when the following language appeared in a deed by which Paul G. Hendricks conveyed his property to William H. Church:
 "Reserving however a right of way to and from the Rocky David Lot from the road halfway up Hampleton Hill south through a pasture to a cart path and by said path to the said Rocky David Lot, also reserving the Briggs Burying Lot and right of way thereto."
The reservation of this right of way was to permit access to a landlocked parcel of land now known as Rocky David Farm. This parcel of land consists of 31 acres with 11.86 acres located in the Town of East Greenwich and the remainder located in the Town of North Kingstown. The Plaintiff, Rocky David Farm, LLC is solely owned by David Gannon who in January of 2005 created a limited liability corporation pursuant to Rhode Island law. The parcel was originally purchased by David Gannon's father in 1964. Since its purchase by the Gannon family, the property was not used as it had been formerly; as a working farm. David Gannon stated that the family would hike the land and occasionally picnic there. There was no attempt to use or develop the land in any significant manner until 2005. Since 2005, Mr. Gannon has removed trees for the sale of lumber and firewood, cleared the land where trees were removed, and more recently has been growing the herb ginseng there. His long term prospect is to possibly build a *Page 3 
house on the land. However, his greater utilization of this property has created some immediate needs and concerns. To continue with his forestry and agricultural pursuits he needs a reliable and permanent means of access for farm equipment and motor vehicles. Previously, Mr. Gannon has paid other adjacent landowners, not parties to the instant matter, for temporary access to his property so that he could engage in activities on the land. He now seeks a judicial determination as to the nature, scope and location of the 1887 "right of way to and from the Rocky David Lot."
Two well qualified experts with extensive title experience, Ronald Markoff and Christopher Montalbano, each reviewed the chains of title in this matter. They agreed that the 1887 deed reference quoted above created an easement for the benefit of Rocky David Farm. However, after studying the deeds in the chains of title for the three properties, the experts disagreed on the easement's location. Mr. Markoff concluded to a reasonable degree of professional certainty that the easement crossed both the East Greenwich Land Trust and the Van Reen properties. Conversely, Mr. Montalbano testified to a reasonable degree of professional certainty that the easement burdened only the East Greenwich Land Trust property.
During their testimony, each expert offered conflicting and equivocal testimony relating to the location of the "pasture" and "Hampleton Hill," which are two significant features referenced in the deed and vitally important for establishing the precise location of the easement. The Court heard contradictory testimony regarding the location of the pasture from both title experts. Mr. Markoff concluded that the "pasture" was located on the Van Reen property, while Mr. Montalbano reasoned that the "pasture" was located on the Land Trust property.
David Dumas, volunteer counsel for the East Greenwich Land Trust since its creation in the late 1980's, testified as to Hampleton Hill, or Hamilton Hill's location. Notwithstanding Mr. Dumas' interest and experience in East Greenwich history, inconsistencies within his testimony *Page 4 
likely flow from his primary reliance on Violet E. Kettelle's "The Rural Roads In East Greenwich In the Teens And Twenties Of 1900, Their Farms And Owners With Some History," which is inherently ambiguous as to both the Hill's name and location.[2] Thus, the state of the evidence regarding these easement landmarks leaves their locations unsettled. This uncertainty, combined with conflicting conclusions by the title experts, discrepancies between type-one surveys, and nonuse over the past forty to fifty years, leads this Court to conclude that the exact location of the 1887 deeded easement is unknown.
Another complication arises from Loretta V. Shepard and Velma B. Shepard's 1936 conveyance to Clinton E. Shepard and Amy J. Shepard. This conveyance, which severed a rectangular parcel from the Boesch Farm property and contained the land which would become the Van Reen property, did not contain the original easement language, but reserved "whatever rights of way may be appurtenant to the land hereby conveyed." Transfers of this rectangular parcel up until 1951 were made "subject to any rights of way which may exist," and between 1989 and 2000 the transfers of this parcel are silent on the matter of any right of way. Therefore, the Van Reen chain of title, tracing back to the Shepards, does not contain the express grant of an easement.
Despite the fact that the easement is not reflected in the most recent deeds in the Van Reen chain of title, the Court found visual confirmation of easements on both the Boesch Farm and Van Reen properties. At trial numerous witnesses testified that a "spur" or pathway was still *Page 5 
visible on the Land Trust property leading to the Rocky David Farm, a fact that was confirmed when the Court walked this property during its view before the trial. Fred Van Reen testified that when he purchased his property from James F. White in 2003, a stone wall opening and a path approximately 100 feet long with visible tire tracks existed in the location of his current driveway. Based on this testimony and evidence in the land records, the Court concludes that pathways traversed the Van Reen property permitting access to South Road from both the Boesch Farm and Rocky David Farm properties. However, it is not clear whether these pathways traversed the same land and are in fact the easement in question.
The Court is troubled by the actions and inactions of the parties and their representatives at crucial times and is disturbed by the obvious malfeasance of the Town of East Greenwich's Town Planner in regard to the properties at issue. The parties' intentional failure to resolve this easement dispute — before the East Greenwich Land Trust's purchase of Boesch Farm and before the subdivision of the White property and the subsequent construction of the Van Reen home — forces the Court's hand to craft a resolution of a dispute that is of their making.
This case is complicated by the actions of all three landowners. David Gannon, the sole member and owner of Rocky David Farm, LLC, testified that he knew that an easement benefiting his property was created by the 1887 deed. In 1992, eighteen years before this trial commenced, he first sent a letter to the Boesch family alerting them of his claim.[3] In 2003 Mr. Gannon raised the issue of this easement with the Town of East Greenwich. He also notified Fred Van Reen that he had an easement across his land that same year. However, despite being represented by counsel, when Fred Van Reen began construction of his home, the Plaintiff did *Page 6 
not take legal action to enjoin construction and seek a legal determination of the location and scope of the easement. Consequently, Mr. Gannon now claims that the Van Reen home partially blocks the Rocky David Farm easement that he believes crosses the Van Reen property between the Boesch Farm spur and the 100 foot path that opened onto South Road.
For his part, Fred Van Reen proceeded to construct his home after being notified by David Gannon that his property was burdened by an easement. When the Van Reens' predecessor James F. White subdivided the property in 2002, the subdivision map failed to indicate the existence of any easements. However, surveys of adjacent property, such as the survey completed by John Mensinger in 2001, included a path on what is now the Van Reen property. Moreover, Mr. Van Reen acknowledged receiving notice of the easement from Mr. Gannon. This notice, coupled with an opening in a stone wall with a visible path running from South Road onto his property, gave Van Reen notice that his property may be burdened by an easement.
Finally, the Town of East Greenwich's interests were poorly represented by the lack of diligence and finality on this issue at various times by its Town Planner, Lee Whitaker and representatives of the East Greenwich Land Trust, most notably David Dumas. Mr. Dumas testified that he was first alerted that the Land Trust property was possibly burdened by an easement when Mr. Gannon's attorney notified the Boesch family of his claim via the 1992 letter. Although his testimony was unclear as to whether he first visited the property to assess the merits of Mr. Gannon's claim in the nineties or in 2003, there is no doubt that he visited the property and observed the trails on both the Land Trust and Van Reen properties before the Van Reens began to construct their home. Furthermore, although Mr. Dumas was aware of both Mr. Gannon's easement claim and Mr. White's subdivision application around 2001, he did not *Page 7 
raise the issue of the right of way to the Town nor did he inform Mr. Gannon that the Land Trust would receive two acres that included a portion of the easement Mr. Gannon claimed as part of the subdivision's approval. In spite of Mr. Dumas' failure to raise the issue, the Town was not entirely without knowledge that the property it was about to subdivide might be burdened by an easement. Planning Board Minutes from March 21, 2001 indicate that although the Town knew that a path existed on the White property, it surprisingly approved the subdivision of the property without determining if a legal right of way existed.
In January 2003, the Van Reens bought two lots from Mr. White. Six months later Mr. Gannon raised his easement claim again, this time to Mr. Whitaker, who referred him to Mr. Dumas. Thus, it appears that even after being affirmatively notified of Mr. Gannon's claim to a deeded easement the Town issued permits for the construction of the Van Reen home forgoing another opportunity to address the merits of Mr. Gannon's easement claim. Finally, even after walking the Land Trust property with Mr. Gannon and his attorney in 2004 and observing paths entering the White property beginning at South Road that corresponded with paths on the Land Trust property, Mr. Whitaker and Mr. Dumas closed their eyes and took no affirmative steps to determine the veracity of Mr. Gannon's easement claim.
Therefore, because each party is to some extent complicit in creating this confusing state of affairs and no one attempted to resolve this matter before the Land Trust purchased the Boesch Farm and the Van Reens purchased their property and constructed their home, the Court is tasked with exercising its equitable powers to fashion a remedy that recognizes the landowners' competing interests as to where the original 1887 easement should now be located. *Page 8 
 II STANDARD OF REVIEW
Pursuant to Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure, "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." Super. R. Civ. P. 52(a). In accordance with this rule, "[i]n a non-jury trial, the trial justice sits as the trier of fact as well as of law."Parella v. Montalbano, 899 A.2d 1226, 1239 (R.I. 2006) (quoting Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984)). "Consequently, he weighs and considers the evidence, passes upon the credibility of witnesses, and draws proper inferences."Id. The factual determinations and credibility assessments of a trial justice "traditionally accords a great deal of respect . . . [because it is] the judicial officer who actually observe[s] the human drama that is part and parcel of every trial and who has had the opportunity to appraise witness demeanor and to take into account other realities that cannot be grasped from a reading of a cold record." In re Anderson, Zangari Bossian, 888 A.2d 973,975 (R.I. 2006). The Rhode Island Supreme Court has recognized that "a trial justice's analysis of the evidence and findings in the bench trial context need not be exhaustive, and if the decision reasonably indicates that he exercised his independent judgment in passing on the weight of the testimony and the credibility of the witnesses it will not be disturbed on appeal unless it is clearly wrong or otherwise incorrect as a matter of law." Notarantonio v.Notarantonio, 941 A.2d 138, 144-45 (R.I. 2008) (quotingMcBurney v. Roszowski, 875 A.2d 428, 436 (R.I. 2005)). A "trial justice `need not engage in extensive analysis and discussion of all the evidence. Even brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case.'" Hilley v. Lawrence,972 A.2d 643, 650-51 (R.I. 2009) (quoting Donnelly v.Cowsill, 716 A.2d 742, 747 (R.I. 1998)). *Page 9 
 III ANALYSIS
Based on a concern that a "person's title to real estate should remain free and unfettered," the Rhode Island Supreme Court has "held an individual who seeks to establish an easement upon the land of another to a high degree of proof." Berberian v. Dowd,104 R.I. 585, 589, 247 A.2d 508, 510-11 (1968). "Although a plaintiff in a civil action normally must meet his burden by only a preponderance of the evidence, the plaintiff must overcome a higher clear and convincing standard to prove an easement." Ondis v.City of Woonsocket, 934 A.2d 799, 803 (R.I. 2007) (citingBerberian, 104 R.I. at 589, 247 A.2d at 510-11).
When interpreting a deed, the Court "will consider all of the facts and circumstances existing at the time of execution . . . and effect will be given to the intention of the parties whenever that intent can be ascertained." Carpenter v. Hanslin,900 A.2d 1136, 1147 (R.I. 2006). "`The terms of the grant of an easement are subject to construction in the like manner as are the terms of a deed.'" Id. at 1148 (quoting Vallone v. City ofCranston Dept. of Public Works, 97 R.I. 248, 257, 197 A.2d 310,316 (1964)). Where language in the deed is ambiguous, the court may "properly resort to a consideration of `any concomitant circumstances' which have a legitimate tendency to show the intentions of the parties." Id. (quoting Waterman v.Waterman, 93 R.I. 344, 348-49, 175 A.2d 291, 294-95 (1961)). In deeds granting easements, ambiguity exists "when the particular location point at issue cannot be determined, not in instances where the location point is clear from the language of the deed."Weems v. County Com'rs of Calvert County, 919 A.2d 77,82 (Md. 2007).
"`The grant of an easement normally will control its location if the location is specified therein.'" Hilley,972 A.2d at 649-50 (quoting 25 Am. Jur. 2d Easements andLicenses § 64 at 560 (2004)). *Page 10 
However, "[t]he precise location of an easement need not be designated for the easement to be valid." Frenchtown Five, LLC v.Vanikiotis, 863 A.2d 1279, 1282 (R.I. 2004). In such instances, owners of the dominant estate "are entitled to a convenient, suitable, and accessible way, having regard to the interest and convenience of the owner of the land as well as the owner of the dominant tenement." McConnell v. Golden, 104 R.I. 657, 663,247 A.2d 909, 912 (1968). Where "the grant does not provide the location of an easement, neither party exercises a right to locate it, and the parties are unable to agree on a location, a court acting in equity may fix its location." 25 Am. Jur.Easements Licenses § 68 (2010).
Today the Court is presented with a unique challenge. The 1887 deed expressly "[r]eserv[ed] . . . a right of way to and from the Rocky David Lot from the road halfway up Hampleton Hill south through a pasture to a cart path and by said path to the said Rocky David Lot." Although the grant of an easement usually controls the location of the easement if specified therein, this Court heard equivocal and conflicting testimony over the location of both Hampleton Hill and the pasture; the two landmarks that are necessary to establish the location of the easement. See Hilley,972 A.2d at 649-50. Uncertainty over the location of the easement is not fatal, however, because the "precise location . . . need not be designated for the easement to be valid." Frenchtown Five,863 A.2d at 1282.
The parties do not dispute the location of the easement on the East Greenwich Land Trust property and where it connects to the Rocky David Farm. It is the section running from the "spur" to South Road where the location is disputed. The two title experts, after reviewing the same documents, came to contradictory conclusions on the easement's location, one placing it entirely on Boesch Farm, while the other concluded that the easement burdened both Boesch Farm and the Van Reen properties. Thus, uncertainty over the location of critical reference *Page 11 
points and incongruity between the experts' conclusions lead this Court to conclude that the location of the easement where it connects to South Road has been lost over time.
The parties devoted considerable time to the issues of abandonment and the applicability of the Rhode Island Marketable Record Title Act. In regards to the issue of abandonment, this Court finds that uncertainty over the easement location prevents the Court from finding abandonment here. "[A] right-of-way by express grant is not extinguished by mere nonuse, and the fact that the easement holder finds a more convenient alternative route does not deprive the easement holder of the easement that remains for the holder's use and enjoyment whenever the holder has occasion to use the right."Jackvony v. Poncelet, 584 A.2d 1112, 1115 (R.I. 1991). Because nonuse alone does not constitute abandonment and uncertainty over the easement location prevents a determination that a corner of the Van Reen home was built on the easement, abandonment is not found.
Extinguishment of the deeded easement under the Rhode Island Marketable Record Title Act G.L. 1956 § 34-13.1 et seq. turns on the applicability of an exception to the Act under which physical evidence of an easement prevents extinguishment. Section 34-13.1-3
provides that when a purchaser's record title to the property does not contain specific identification of the recorded title transaction which created the right of way for forty years or more, the right of way is void. However, an exception to this rule exists if there is physical evidence of an apparent easement on the land. § 34-13.1-7. Although the root of the Van Reens' title tracing back to 1936 when the Shepards severed a rectangular parcel from the Boesch Farm property does not contain the express easement language, the Court finds that the exception to the Act is applicable. Fred Van Reen and Lee Whitaker both acknowledge that a path 100 feet long with tire tracks entered the Van Reen property from South Road, and this path is depicted on at least *Page 12 
two surveys. This physical evidence, combined with the Town's knowledge that the land was potentially burdened by an easement, was sufficient to put the purchaser on notice that the property may be burdened by an easement.
Therefore, because the parties have been unable to agree on a location, this Court acting in equity may fix its location.See 25 Am. Jur. Easements Licenses § 68. In undertaking this task, the Court will construct what it considers the most equitable solution given the present day facts including access to an otherwise landlocked parcel, constraints of an existing conservation easement, and the use and enjoyment of a home.
 IV REMEDY
Based on the foregoing discussion, if this Court chose not to exercise its equitable powers and fashion a remedy to cure the ambiguity in the location of the easement, it would seal Rocky David Farm's fate as a landlocked parcel. However, electing to exercise its authority in the Plaintiff's favor does not confine this Court to order the specific relief requested. "Balancing of equities and hardships may lead the court to grant some equitable relief but not as much as the plaintiff might want. Put differently, the court has the power to measure, shape or tailor relief to fit its view of the balance of equities and hardships." 1 Dan B. Dobbs, Law ofRemedies § 2.4(1) (2d ed. 1993). "The general rule is that courts of equity should fashion injunctive relief designed to preserve to the owner of the dominant estate that to which he or she is entitled, and impose upon the servient estate only the burden that was originally contemplated." Carpenter, 900 A.2d at 1150. Specifically, the Court finds that Rocky David Farm's request for a thirty foot wide easement containing an eighteen to twenty-two foot wide paved right of way is disproportionate to the original easement grant. When the easement was created in 1887, the parties then *Page 13 
contemplated that the Rocky David Farm parcel was entitled to a cart path for its right of way. Today, this would entitle the dominant estate to the substantial equivalent of a cart path, which in this Court's opinion entitles Rocky David Farm to a driveway that would allow access with modern day vehicles.
Therefore, to satisfy Rocky David Farm's right to an easement based on the language contained in the 1887 deed, the Court fashions the following easement: Commencing on South Road, at the boundary between the East Greenwich Land Trust and the Van Reen properties, a fourteen foot wide gravel or dirt driveway, straddling the two properties, will continue along the property line to the rear of the Van Reen property, at which point it will connect with the "spur" and the portion of the easement whose location is undisputed. Four feet of the easement's width will burden the Van Reen property, and ten feet of the easement's width will burden the East Greenwich Land Trust property. The Court reasons that placing the easement entirely on the Land Trust property would place an unfair burden on this party. Additionally, the Court recognizes that the conservation easement over the East Greenwich Land Trust could be adversely impacted by the Court's decision to burden it with a portion of the easement. Therefore, the Court orders that the Plaintiff convey a parcel to the Land Trust equal in size to the Land Trust land now burdened by this easement, but only in the event that the conservation easement is jeopardized by this Court's ruling and provided that such transfer by the Plaintiff would cure any claimed violation of the conservation easement. *Page 14 
 V CONCLUSION
As to the existence of the easement, the Court finds that the 1887 deed established an express easement for the benefit of the Rocky David Farm property. After carefully weighing the evidence presented, the Court concludes that the Plaintiff has established by clear and convincing evidence that the easement created in the 1887 deed is valid and enforceable. The Court further concludes that the exact location of the easement is uncertain, in that the burden of proof has not been satisfied that the 1887 easement burdens one parcel over the other, and consequently, ambiguity over the exact location of the easement is resolved by the reconfigured easement, described above. Finally, based upon the relative size and use of each parcel, and coupled with the parties' longstanding knowledge of the claim of easement, the Court concludes that the nature, scope and location of the easement created by the Court is the least intrusive to all parties concerned, yet establishes a "convenient, suitable and accessible" right of way to Rocky David Farm, as contemplated in the 1887 deed. See McConnell, 104 R.I. at 663,247 A.2d at 912.
The Court directs Plaintiff's counsel to prepare an order consistent with this Court's decision.
[1] Referring to the title of the quintessential Robert Frost poem.
[2] Kettelle's speculative assessment is highlighted in the following passage:
 "I was never on this road very much and cannot describe it fully. As one goes westward the hill keeps rising higher and higher till almost at Hamilton Corner where Tillinghast Road joins South Road. From a deed I wonder if it is the hill called "Hampton" Hill. (I saw this in a Briggs deed.) . . . Could Hampton have been for Hamilton? Hamilton Corner is where Tillinghast Road joins South Road." (Van Reen Ex. C.)
[3] In the letter, which is Plaintiff's Exhibit 28, Mr. Gannon's attorney indicated that he wished to draft a document that would "define with clarity the exact location of the right of way and the uses to which it could be put."
 *Page 1