**Richard GRANT et al.**

v.

**Robert E. BRISKIN et al.**

**No. 91–134–A.**

Supreme Court of Rhode Island.

Feb. 20, 1992.

---

Kathleen Managhan, Edward J. Corcoran, II, Corcoran, Peckham & Hayes, Newport, for plaintiff.

B. Mitchell Simpson, Callahan & Simpson, P.C., Newport, for defendant.

## OPINION

FAY, Chief Justice.

This is an appeal from a Superior Court judgment directing a verdict for the defendants, Robert E. and Paula Briskin (Briskins), and in favor of the plaintiffs, Richard Grant, Robert Davidson, and Frank Oliveira (Oliveira), doing business as 177 Associates (177 Associates), on the Briskins' counterclaim. The trial justice found that because 177 Associates did not possess written authority to enter the five-year lease agreement, the statute of frauds rendered the lease void ab initio. In their pleadings and at trial the Briskins failed to raise the statute of frauds as an affirmative defense. We find the trial justice erred in granting the Briskins' motion for a directed verdict because the five-year lease was not void ab initio and because he improperly raised the statute of frauds sua sponte. We therefore reverse the trial justice's ruling and remand the case to the trial court to conduct a new jury trial on the merits. The relevant facts are as follows.

On July 5, 1984, 177 Associates entered into a lease of a retail condominium, unit No. 14 in the Newport Bay Club, with the Briskins. The lease provided a five-year rental period from July 1, 1984, through June 30, 1989, and established a monthly rent of $650 for the first year. On July 5, 1984, 177 Associates was not yet the legal

owner of the property. The actual sale did not occur until August 29, 1984. Oliveira, a partner in 177 Associates, was also a limited partner in Hill–Newport Partners, legal owners at that time. The Briskins took occupancy on that date and maintained uninterrupted occupancy of the premises and complied with the terms of the lease until January 1986, when they vacated the premises and ceased paying rent.

After the Briskins vacated the premises and returned the keys, 177 Associates made efforts to mitigate damages by seeking to obtain other lessees for the vacated premises. The original suit by 177 Associates was filed in District Court, seeking damages for breach of the lease. The Briskins counterclaimed, alleging that 177 Associates had made damaging misrepresentations of fact to them regarding securing another tenant for the adjoining premises. The District Court judge entered a judgment for 177 Associates, and the Briskins appealed to the Superior Court for a trial de novo. On October 4, 1990, 177 Associates moved to amend its complaint, seeking $22,638.38 in lost rent not recovered by subsequent rental, unpaid taxes and condominium fees, and other expenses, all of which the Briskins had contracted to pay according to the lease. The court granted 177 Associates's motion on October 17, 1990. The Briskins counterclaimed that 177 Associates had made misrepresentations to them and sought rescission of the lease agreement and damages in the amount of $9,999.

In its answer to 177 Associates's complaint the Briskins alleged five affirmative defenses: (1) 177 Associates failed to state a cause of action, (2) 177 Associates had made misrepresentations, (3) the Briskins were entitled to rescission of the agreement, (4) the so-called retail lease agreement was void ab initio, and (5) the Briskins were either tenants at will or tenants at sufferance during their occupation of the premises. The Briskins did not raise the statute of frauds as a defense in their pleadings or at trial.

The case was tried before a jury on October 18, 1990. Oliveira testified at trial that he acted on behalf of Hill–Newport Partners and 177 Associates to obtain a lessee for the retail condominium and had to secure permission from the general partner of Hill–Newport Partners in order to lease the premises. Oliveira testified that Hill–Newport Partners and 177 Associates had entered into a purchase-and-sale agreement prior to leasing the premises on July 5, 1984, which sale was later completed on August 29, 1984. He further testified that he had secured the necessary permission of the general partner of Hill–Newport Partners to allow the Briskins to occupy the premises prior to the transfer of title. Although he referred to oral permission, there was no written agreement authorizing Oliveira and 177 Associates to enter into the lease with the Briskins. Oliveira stated that at the time of the lease negotiations the Briskins knew that 177 Associates was not yet the legal owner of unit No. 14 and that he had to secure permission from the general partner of Hill–Newport Partners before the parties could enter a lease agreement.

At the close of 177 Associates's case the Briskins moved for a directed verdict, asserting that the lease was void ab initio because 177 Associates was not the owner of the premises at the time the parties entered the lease. The trial justice reserved his decision on the motion, and the Briskins presented their case. Paula Briskin testified that she knew at the time of the lease that Oliveira was not the owner of unit No. 14 but was the sales agent who was discussing purchasing it.

On October 22, 1990, after both sides had closed testimony, the trial justice directed a verdict in favor of the Briskins on the amended complaint, finding that 177 Associates had failed to present a prima facie case. The trial justice found in favor of 177 Associates on the counterclaim because no genuine issue of material fact existed concerning alleged misrepresentations by 177 Associates. In his supplemental decision filed on November 21, 1990, the trial justice granted a directed verdict for the Briskins pursuant to Rule 50 of the Superi-

or Court Rules of Civil Procedure. He found that because the statute of frauds was not met in regard to the written agreement between Hill–Newport Partners and 177 Associates conferring authority on 177 Associates to enter a binding five-year lease agreement, the lease agreement was void ab initio, leaving 177 Associates no prima facie case to support its breach-of-contract claims. The trial justice stated that he could not infer authority to support 177 Associates's assertion that it received permission to lease the property to the Briskins. The trial justice found the doctrines of after-acquired title and estoppel by lease inapplicable to the present case. The trial justice noted that the Briskins and 177 Associates would have had to execute a memorandum to affirm the void lease agreement. Because they failed to execute a memorandum, there was no affirmation of the lease that could make it valid and a breach thereon actionable. The final judgment was entered on December 5, 1990.

The 177 Associates appealed to this court, alleging that the trial court erred in granting a directed verdict for the Briskins by raising the issue of the statute of frauds on its own motion because the Briskins had not raised the statute of frauds under G.L. 1956 (1985 Reenactment) § 9–1–4, as a defense in their pleadings or at trial. Instead they presented the affirmative defense that the lease was void ab initio with no further specifics.

■ The standard for granting a directed verdict under Rule 50 of the Superior Court Rules of Civil Procedure is that the trial court "must consider the evidence in the light most favorable to the party against whom the motion is made without weighing the evidence or considering the credibility of the witnesses and extract from that record only those reasonable inferences that support the position of the party opposing the motion." *Evans v. Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977). If there exist genuine issues of fact upon which reasonable persons could differ, the trial court must then allow the jury to decide these factual issues. *Id.* On review this court is similarly to consider the evidence presented in determining whether the trial justice's decision to grant or to deny a party's motion for a directed verdict was proper. *Geremia v. Benny's, Inc.*, 119 R.I. 868, 872, 383 A.2d 1332, 1334 (1978). We must therefore address whether 177 Associates established a prima facie case, looking at the evidence in a light most favorable to it, or whether the evidence clearly supports the trial justice's directed verdict in favor of the Briskins.

■ In the present case the trial justice's decision to grant the Briskins' motion was premised on his finding that 177 Associates's noncompliance with the statute of frauds by failing to obtain written permission to lease the premises rendered the lease void and prevented 177 Associates from establishing a prima facie case. It is well-settled law that the trial justice may not raise an affirmative defense for a defending party. "Where a respondent or defendant makes no claim for the benefit of the statute of frauds, either by pleadings or otherwise, the court *sua sponte* does not interpose it for him." *Conti v. Fisher*, 48 R.I. 33, 36, 134 A. 849, 850 (1926). This court affirmed this principle in *Ardente v. Horan*, 117 R.I. 254, 366 A.2d 162 (1976), concluding that because the defendants did not raise the defense in the trial court, the court sua sponte would not interpose it for them even though the contract appeared to be within the statute of frauds. *Id.* at 256 n. 1, 366 A.2d at 164 n. 1. In *Easton's Point Association v. Coastal Resources Management Council*, 522 A.2d 199, 202 (R.I.1987), this court found that a trial justice had no standing sua sponte to attack the constitutionality of a statute. Similarly we find that the trial justice in this case erred in raising the statute of frauds sua sponte for the benefit of the Briskins.

■ Rule 8(c) of the Superior Court Rules of Civil Procedure specifically mandates that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * statute of frauds * * * and any other matter constituting an avoidance or affirmative defense." This court considers that "[t]his is a mandatory provision;

failure to plead an affirmative defense results in its waiver." *Duquette v. Godbout*, 416 A.2d 669, 670 (R.I.1980). The Briskins did state that the lease was void ab initio but failed to state with specificity the reasons supporting their assertion. Merely asserting that the lease was void ab initio is not sufficient to provide plaintiff fair notice of the defense as is required by the rules. Because the Briskins did not specifically raise the statute-of-frauds defense in their pleadings or at trial, they waived it and may not now benefit by the trial justice's interposing it for them. We find that the trial justice erred in raising the waived affirmative defense for the Briskins.

The Briskins assert that under *Graham v. Williams*, 92 R.I. 102, 166 A.2d 412 (1961), the burden is on 177 Associates to present contrary evidence. In that case the party had raised the appropriate affirmative defense at trial, denying that he had entered a written or an oral agreement. The respondent had denied the making of the contract, shifting the burden to the complainant to prove that such an agreement existed. *Id.* at 108, 166 A.2d at 416. In the present case the Briskins did no more than state that the lease was void ab initio. This alone is not sufficient because there exist too many varied reasons that could conceivably render a lease void ab initio other than failure to comply with the statute of frauds. The existence of the five-year signed lease itself is not at issue but rather the existence of the written agreement conferring authority upon the lessors to enter a binding lease for a five-year term. The Briskins' motion was premised on the fact that 177 Associates was not the owner of the property when the agreement was signed, thereby rendering the lease void ab initio. We conclude that the Briskins retained the burden of pleading, and failed to sustain that burden and that the trial justice's sua sponte raising of the statute-of-frauds defense upon which he granted the Briskins' motion for a directed verdict was erroneous.

The Briskins' reliance on *Graham v. Williams* is misplaced. We find that the proposition that 177 Associates retained the burden to prove it complied with the statute of frauds is in direct contravention to Rule 8(c), which mandates that the pleading party set forth the statute of frauds. It has never been the intention of this court or the litigation process to shift the burden to the plaintiff to defend against any and all defenses that a defendant may possibly raise without the benefit of being aware of those defenses that are applicable. Such a requirement is neither feasible nor realistically possible for a plaintiff. In this case we find that the Briskins retained the burden to plead the statute of frauds as a defense, as required by Rule 8(c). Their failure to comply with this requirement thereby prevented the trial justice from setting forth that defense sua sponte.

In reaching his decision to grant the Briskins' motion for a directed verdict, the trial justice relied heavily on *Bourne v. Campbell*, 21 R.I. 490, 44 A. 806 (1899). In that case there was a written lease signed by the son of the owner purporting to act on her behalf. In the lease instrument the son did not purport to be the agent or attorney of the owner but signed in his individual capacity. *Id.* at 491, 44 A. at 806. He possessed no interest in the property he was purporting to lease. Because there was no written evidence of the authority to bind the owner of the property to the lease, the agreement could not be regarded as the owner's agreement. *Id.* at 492, 44 A. at 806. This court implied that signing the lease agreement with authority to lease the premises would be an important factor to consider. The court noted concern that a party might be charged without having signed or given permission to do so. *Id.*

The present case, however, is clearly distinguishable. This court has held that equitable conversion occurs after there has been a purchase-and-sale agreement, vesting equitable title to the land involved in the vendee. *George v. Oakhurst Realty, Inc.*, 414 A.2d 471, 473 (R.I. 1980). "The vendee in an executory contract for the sale of land becomes the equitable owner of the same, the vendor holding legal title merely as security for the

purchase price." *Jakober v. E.M. Loew's Capitol Theatre, Inc.*, 107 R.I. 104, 110, 265 A.2d 429, 433 (1970). We find that this jurisdiction adopts and adheres to the theory of equitable ownership once the seller and the buyer have entered into a valid purchase-and-sale agreement. There was evidence adduced at trial from 177 Associates that it had entered into a valid purchase-and-sale agreement with Hill–Newport Partners. This sale became final, and legal title transferred on August 29, 1984. Looking at this evidence in a light most favorable to 177 Associates, we find that this agreement would effectuate equitable conversion. In the present case 177 Associates presented evidence that it obtained permission to lease the property and that the Briskins were aware of the permission requirement before they could enter into a valid lease agreement. If at the new trial the trial justice finds that such a valid purchase-and-sale agreement was created, we hold that 177 Associates, as an equitable owner, coupled with oral permission it received to enter into the lease, possessed the authority necessary to enter into a valid and binding lease, especially since the Briskins were aware of the pending sale of the premises and possessed the premises without any interference.

We also hold that the trial justice erred in declaring the lease itself void ab initio and subsequently denying consideration of the doctrine of estoppel by lease. The Briskins took occupation of the premises and continued occupation, never experiencing interference with their possession. This court has held that the landlord-tenant relationship "implies ownership, or at least the right to possession on the part of the landlord when the lease is terminated; and the tenant, having recognized such ownership or right of possession by the hiring of the premises, is generally held to be estopped from questioning his landlord's title in an action for the recovery of the possession thereof, so long, at any rate, as the true owner leaves him in unmolested occupation." *Fisk v. Brayman*, 21 R.I. 195, 200, 42 A. 878, 879 (1899). As long as the tenant is not disturbed in his occupation of the premises, he is bound by the contract to pay the rent, regardless of the lessor's title, with payment excused only if the tenant has been ousted or evicted. *See, e.g.,* *George v. Putney*, 58 Mass. (4 Cush.) 351, 354 (1849); *Morse v. Goddard*, 54 Mass. (13 Met.) 177, 179 (1847); *Farmers' Deposit National Bank of Pittsburg v. Western Pennsylvania Fuel Co.*, 215 Pa. 115, 117, 64 A. 374, 374–75 (1906). We agree with the proposition that when a party enters into a lease valid on its face and takes possession as tenant pursuant to the lease, the tenant becomes estopped from denying the landlord's title or right to lease those premises, especially in the absence of interference with the tenant's occupation. *See generally* 49 Am.Jur.2d *Landlord and Tenant* § 126 (1970). Therefore, we conclude that the Briskins are estopped from denying 177 Associates's title absent any interference with their occupation or possession of unit No. 14.

In requiring written authority for 177 Associates to lease the property prior to its sale, the trial justice concluded that "[t]o hold otherwise would result in the creation of an exception to § 9–1–4(1) which is contrary to the public policy embodied therein." However, public policy also operates against unjust enrichment to a party, especially when that party has entered into an agreement with knowledge of the facts of which he complains at a later time. This policy is especially applicable in the present case. The Briskins adhered to the terms of the lease until they vacated the premises in January 1986, were not deprived of occupancy and possession of the premises, and were fully aware of the ownership issue and permission requirement before 177 Associates could enter a lease. Evidence was presented that the Briskins knew that 177 Associates was not yet the legal owner of the leased property. In the present case the Briskins failed to plead the statute-of-frauds defense. To vitiate the existence of the lease and compliance with its terms now, thereby allowing the Briskins to deny its existence as void ab initio, would in effect operate against that public policy of which the trial justice speaks and would violate fundamental fairness in business

dealings. We hold that permitting the Briskins to escape the lease by raising concerns that they knew of at the inception of the lease and also benefit from a defense they failed to raise would contravene public policy. The Briskins' possession of the leased premises was never challenged or interfered with, and the purchase and sale was completed as planned. In looking at the evidence in a light most favorable to 177 Associates, we therefore find that the trial justice erred in finding the lease agreement void ab initio under the statute of frauds on its own motion and according to its underlying policy considerations. There exist genuine issues of material fact that establish a prima facie case for 177 Associates that a lease was created and subsequently breached.

For the reasons stated, the appeal of the plaintiffs, 177 Associates, is sustained. The decision of the trial justice granting the motion of the defendants, the Briskins, for a directed verdict is hereby reversed. This case is remanded to the Superior Court to conduct a new trial and for further proceedings in accordance with this opinion.