Louis M. PUCINO

v.

Frederick K. UTTLEY, Trustee et al.

No. 2000–527–APPEAL.

Supreme Court of Rhode Island.

Nov. 6, 2001.

Bruce A. Wolpert, Providence, James C. Sullivan, North Kingstown, for plaintiff.

Joseph B. Carty, Jr., Kathleen M. Hagerty, Providence, for defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

### PER CURIAM.

This is an appeal from an order granting a preliminary injunction. It disputes the alleged acquiescence of abutting property owners to certain physical changes in a boundary line dividing their property lots in the City of Warwick. The defendants, Frederick K. Uttley and Gertrude L. Crudden, as trustees of the Francis M. Crudden Trust, and Gertrude L. Crudden individually, challenge the granting of a preliminary injunction that temporarily prevents them from altering this physical boundary line. A Superior Court hearing justice determined that the defendants and their predecessors in title had acquiesced in the changed boundary line for a period of approximately nineteen years. On appeal, a single justice of this Court ordered the parties to show cause why the appeal should not be decided summarily. After considering the parties' written and oral submissions, we conclude that they have not shown cause and that we can decide the appeal at this time.

The plaintiff, Louis M. Pucino, alleged that he and defendants owned adjacent lots in the City of Warwick; that the physical boundary line between these lots had been established and delineated for a period of twenty-one years; and that he had continually maintained the property up to that line for that entire period. He asserted that the parties have abided by that line and that defendants in particular have acquiesced for all these years in the redrawn boundary.

At the hearing on plaintiff's motion for a preliminary injunction the parties submitted an agreed statement of facts that the court relied upon in rendering its decision. The decedent, Francis Crudden, and his wife, Gertrude Crudden, purchased their

lot in 1977. The plaintiff obtained title to the adjoining lot in 1978. After Francis Crudden died, in 1997, Gertrude Crudden and another coexecutor of his estate conveyed his half interest in the lot to the Crudden Trust. The disputed portion of land is on the south side of plaintiff's lot, measuring approximately 50 feet by 220 feet. Record title to that portion of the land lies with defendants.

In June 2000, plaintiff entered into a lease with George Sadowski, Jr., who operated an automobile-repair business on the property. Previously, plaintiff had operated his own towing service and garage there. In 1978, plaintiff operated a truck-towing business on the site. At that time he was unable to turn his truck around on his lot while it was towing a full tractor trailer. In 1978 or 1979, plaintiff secured Francis Crudden's permission to clear some trees on a portion of the Crudden's property to make a turnaround. In fact, a Crudden employee physically cleared this area to accommodate plaintiff. Shortly thereafter, according to plaintiff, this same individual bulldozed the rubble and dirt from the area, thereby creating a berm, or earthen boundary, at the edge of the disputed land. Later, plaintiff laid gravel down in the area and then erected a fence on top of the berms to enclose the back of his property, including this new area formed by the berms. He said that he did not ask permission of the Cruddens to erect the fence or put down the gravel. The plaintiff used the lot to store cars he had towed there. This area has remained fenced in as if it were part of plaintiff's property for twenty or twenty-one years, and he has continuously used it during this time. He further testified that neither Francis Crudden nor anyone else in the Crudden family ever objected to his use of the disputed area. In fact, at one point a member of the Crudden family asked plaintiff's permission to store his car on that land, and plaintiff agreed, storing the car in the back of the lot.

In 1998, plaintiff built a garage on his property after obtaining a septic-system permit and zoning-board approval for the project. No member of the Crudden family appeared at the zoning-board hearing or objected to the building of the garage. As previously stated, he then leased the garage to Sadowski. One day in late June or early July 2000, plaintiff received a call from Sadowski indicating that defendants were building a fence across the area in front of the garage so that it partially blocked off the first bay door of the garage and virtually cut off access to two of the work bays. Sadowski could gain access to them only with "extreme difficulty." Also, because he would have to use one of those two bays to enter the other, "*** it pretty much renders one whole stall useless, because that's where the traffic comes in and out."

Witnesses for the Crudden family as well as the Cruddens themselves specifically denied ever agreeing that the dirt mound or berm indicated a new property line. Rather, they stated, they always viewed plaintiff's use of the disputed land as permissive.

The hearing justice ruled that plaintiff had met the standard for obtaining a preliminary injunction. She pointed out that the element of irreparable harm had been met by the extreme difficulty that plaintiff and his tenant, Sadowski, would face in using the south side bays of the auto repair garage if a temporary injunction were denied. She said, "I'm satisfied that the area in question is a necessary area for Mr. Sadowski to *** conduct his business *** and *** that equitable relief would be appropriate ***." She found that plaintiff used the land continuously from 1979 or 1980, when Francis Crudden first gave

him permission to use it in this manner. From that point on, the hearing justice noted, plaintiff maintained the property and used it as his own. She found that in 1981, an employee or agent of defendants did some excavation work for defendants and created a dirt mound, or berm, that established a de facto boundary. "He did it in such a way that it showed a respect of the plaintiff's use of the disputed land to turn his vehicles around; an acknowledgment that the plaintiff was using the property for that purpose, and it created a new boundary for the defendants' property. And from that point on, that boundary was respected." The hearing justice determined that defendants acquiesced in the physical redrawing of the boundary line, that plaintiff had shown a probability of success on the merits, and that plaintiff would suffer irreparable harm if the injunction were not granted.

On appeal, defendants argue that the hearing justice misconceived the doctrine of acquiescence. They contend that the record is devoid of evidence that the parties mutually recognized the berm as the new boundary line. The defendants maintain that they created the berm when they excavated for a septic system. They argue that no evidence showed that defendants did more than grant plaintiff a license to use the property on plaintiff's side of the berm. Furthermore, they suggest, plaintiff's act in seeking a zoning variance in 1997 to build his garage showed that he recognized the deeded property line as the real boundary. Believing that the hearing justice misconceived the evidence, defendants insist that she clearly erred in finding that plaintiff had established a likelihood of success on the merits. They also assert that plaintiff failed to show that he was threatened with irreparable harm for which no legal remedy was available. Therefore, they conclude, the hearing jus-

tice abused her discretion in granting the preliminary injunction.

■■■■ The decision to grant a preliminary injunction lies within the sound discretion of the hearing justice. *Iggy's Doughboys, Inc. v. Giroux,* 729 A.2d 701, 705 (R.I.1999) (per curiam). Hence, this Court's review is limited to whether the judge abused that discretion. *Id.* The party appealing from the grant of temporary injunctive relief bears a heavy burden in seeking to reverse that ruling. *Fund for Community Progress v. United Way of Southeastern New England,* 695 A.2d 517, 521 (R.I.1997). In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo. *Iggy's Doughboys, Inc.,* 729 A.2d at 705 (citing *Fund for Community Progress,* 695 A.2d at 521).

■■■■ In this case, hearing justice found that plaintiff had shown a likelihood of success on the merits. To so find, she had to apply the elements of a claim of acquiescence to a reconfigured boundary line. Like adverse possession, the doctrine of acquiescence to an observable physical boundary line constitutes a recognized means by which a claimant can gain title to the real estate encompassed by that boundary line, even though another party clearly possesses record title to that land. *See DelSesto v. Unknown Heirs of Lewis,* 754 A.2d 91, 95 (R.I.2000) (per curiam). This Court discussed this doctrine at some length in *Locke v. O'Brien,* 610 A.2d 552 (R.I.1992), explaining that "[i]n effect, the acts of the parties and their predecessors serve as a substitute for the actual record title." *Id.* at 556. "[A] party

alleging acquiescence must show that a boundary marker existed and that the parties recognized that boundary for a period equal to that prescribed in the statute of limitations to bar a reentry, or ten years." *Id.* Most importantly, the element of recognition may be inferred from the silence of one party (or that party's predecessors in title), *id.*, as well as by affirmative acts. We review a trial court's finding of acquiescence to a revised boundary line with the deference accorded to determinations involving mixed questions of law and fact. *Id.*

The question here is not whether plaintiff established his claim of acquiescence with certainty, but whether he showed a reasonable probability of succeeding on that claim. *See Fund for Community Progress*, 695 A.2d at 521. The hearing justice determined that he had done so, and, after reviewing the record, we are unable to find fault with that conclusion.

▇ The doctrine of acquiescence provides that "owners of adjoining estates are precluded from denying a boundary line recognized by both owners for a length of time equal to that prescribed by the statute of limitations barring a right of reentry." *Locke*, 610 A.2d at 556 (citing *O'Donnell v. Penney*, 17 R.I. 164, 20 A. 305 (1890)). In *Locke*, the parties' predecessors in title had erected a fence in 1926, the posts for which were still standing in 1960. This Court found "adequate support for the conclusion that both parties had tacitly recognized the boundary since at least 1974." *Locke*, 610 A.2d at 556. The *Locke* plaintiffs had always considered the line of the fence posts as the boundary, and this Court stated:

"The record is devoid of any evidence that the defendants took action to remove the fence posts or to challenge the plaintiffs' claim that those posts demarcated their property boundary. Such inaction, in the face of notice that the fence posts had existed, serves as sufficient recognition by the defendants of the boundary line, in our view, to satisfy the mutual-recognition element required in a determination of acquiescence." *Id.* at 557.

In *Paquin v. Guiorguiev*, 117 R.I. 239, 366 A.2d 169 (1976), another acquiescence case, this Court upheld the trial justice's determination that a boundary line had been established by acquiescence. The uncontroverted evidence in the case showed that the parties and their predecessors in title had acquiesced for forty-six years in a boundary line marked by a fence and a retaining wall.

▇ In this case, plaintiff's original use of the disputed property was permissive. Indeed, he acknowledged that Francis Crudden had granted him permission to use the property as a turnaround for his towing business. But plaintiff later fenced in this property while continuing to use it as his own. The defendants, though they remained silent, still viewed plaintiff's use as permissive. The plaintiff also applied in 1997 for a zoning variance to build his commercial garage on the property. The defendants contend that he needed the variance because plaintiff believed the garage was too close to the deeded property line. This showed, they assert, that he recognized the deeded boundary line, not the apparent boundary line, as the actual property line.

Although the evidence of acquiescence is weaker here than it was in *Locke* and *Paquin*, nevertheless, the issue before us is not whether plaintiff conclusively established his claim of acquiescence, but whether he showed a reasonable probability of succeeding on that claim. *Leone v. Town of New Shoreham*, 534 A.2d 871, 873–74 (R.I.1987). The hearing justice be-

lieved that he had done so, and there was evidence which, if believed, would tend to support that finding. Given the deference we accord to the findings of a hearing justice in issuing a preliminary injunction, we are unable to say at this point that her conclusion concerning plaintiff's showing of a reasonable probability of success was clearly erroneous.[1]

The plaintiff also had to show that he "stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." *Fund for Community Progress,* 695 A.2d at 521. The plaintiff's tenant, Sadowski, testified that if defendants were allowed to put a fence across the actual property line, his access to two of the four bays in the garage on the property would be extremely restricted. One of the bays would be virtually unusable because it would have to remain vacant for vehicles drive through it to reach the other bay. Those two bays were used for 60 to 70 percent of his garage business. This evidence amounted to a substantial showing of threatened or actual physical interference with the conduct of a continuing business and the attendant prospective loss of customer goodwill. Thus, it was sufficient to establish the element of irreparable harm. *Leone,* 534 A.2d at 873–74.

When considering the equities in this case, it also appears to us that the issuance of the preliminary injunction imposed relatively little hardship on defendants who, after all, have lived with the status quo ante for almost twenty years. Conversely, plaintiff would have suffered the loss of usable commercial space on the property if the court had declined to issue temporary equitable relief. Thus, the preliminary injunction clearly maintained the status quo in this case pending the outcome of the trial.

In sum, we cannot say that the hearing justice in this case abused her discretion in granting temporary injunctive relief. The key question—and perhaps the closest one factually—was whether the plaintiff showed a reasonable probability of succeeding on the merits. Although the defendants vigorously contest the plaintiff's assertion that they acquiesced in the boundary change, acquiescence may be established by a party's silence as well as by his or her affirmative acts. *Locke,* 610 A.2d at 556. The evidence of the defendants' silence over the past two decades, although it scarcely was dispositive, was sufficient to show that the plaintiff has a reasonable probability of eventually succeeding on his claim of acquiescence—even though, at trial, the ultimate fact-finder may well conclude otherwise by deciding that the use in question always was per-

---

1. We note in passing that this case would appear to have been a prime candidate for consolidation of the hearing on preliminary injunction with a trial on the merits. Pursuant to Rule 65(a)(2) of the Superior Court Rules of Civil Procedure, "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." *See, e.g., Oster v. Restrepo,* 448 A.2d 1268 (R.I.1982) (approving order consolidating hearing on preliminary injunction with trial on the merits). Consolidation can occur either on the motion of any party or by the hearing justice ordering consolidation *sua sponte,* after giving adequate notice and sufficient time to the parties to prepare for same. In this case, however, no party moved for consolidation and the court did not consolidate the proceeding on its own initiative. Consequently, our scope of review is limited, and the parties must still litigate the issues presented to us on the merits after we remand the case.

missive, even after plaintiff erected the fence along the physical boundary line created by the berm.

For these reasons, we affirm the order granting the preliminary injunction, deny the defendants' appeal, and remand this case to the Superior Court for further proceedings.