[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is Plaintiff Rosemary C. Alden's ("Mrs. Alden's") petition for declaratory judgment and injunctive relief, requesting that this Court enjoin Defendants Lawrence Quintal and Dawn Quintal ("Mr. and Mrs. Quintal") from interfering with the use of her easement on Defendants' property. Defendants object to Plaintiff's motion and have filed a counterclaim requesting this Court to temporarily, preliminarily, and permanently enjoin and restrain Plaintiff from enforcing any rights she claims to have with respect to the easement and from taking any steps to violate the Defendants' right to quiet enjoyment of their property. Plaintiff denies the Defendants' allegations.
 FACTS AND TRAVEL
In 1998, Mrs. Alden owned three adjacent lots of land in Warren, Rhode Island: 15 Church Street, 17 Church Street, and 18 Baker Street. Situated upon 15 Church Street is William J. Smith Son Funeral Home, Inc. ("Funeral Home"), a funeral business owned by Mrs. Alden that has been in her family for over one hundred years. Although located in a residential zoning area, the Funeral Home is a lawfully existing nonconforming use. However, due to the proximity of structures in the surrounding area, parking for the funeral home is minimal. As a result, the Funeral Home has parked cars in the paved lot located on 17 Church Street.
In 1998, Mrs. Alden hired Defendant Lawrence Quintal to work at the Funeral Home as a full time employee. Mr. Quintal's duties for the Funeral Home included assisting the funerals, parking cars for funerals, and keeping the lot clean and orderly. After several years of employment with the Funeral Home, in 2001 Mr. Quintal and Mrs. Alden entered into an agreement whereby Mrs. Alden would lease the property located at 17 Church Street to the Quintals. After becoming a tenant, Mr. Quintal often inquired what his future would be with the funeral home once he obtained his funeral director's license. Mrs. Alden told Mr. Quintal that he would not receive any pay increase even when he acquired his license. In response, in the early spring of 2002, Mr. Quintal informed Mrs. Alden that he was planning to leave the Funeral Home and seek employment elsewhere. However, Mr. Quintal was convinced to stay with the Funeral Home through the end of the summer while the Funeral Home's director, Catherine Tattrie, was on maternity leave.[1]
After informing Mrs. Alden of his intention to leave the Funeral Home, Mr. Quintal inquired about purchasing 17 Church Street. On May 10, 2002, the Plaintiff and Defendants entered into a Purchase and Sales Agreement whereby Plaintiff was to convey the 17 Church Street property to the Defendants. The contract stated that "Title shall be further subject to an exclusive easement for the benefit of William J. Smith Son, Inc. to use the paved parking lot located on the Premises." At 10:33 a.m., on May 23, 2002, the day of the closing, Mrs. Alden executed and filed a Grant of Easement giving her Funeral Home the right to a "perpetual easement to use the paved lot currently located on . . . 17 Church Street. . . ." The easement provided:
 "Grantee's [Funeral Home's] use of this easement area shall include the right to access the area by foot or by motor vehicle, and to allow Grantee, its agents or invitees to park their motor vehicles in the easement area. Grantor [Mrs. Alden], her successors or assigns, shall not interfere with Grantee's use of the easement area. Grantee shall have the right to make any repairs or improvements to the easement area at Grantee's expense."
One minute after this easement was filed, at 10:34 a.m., Mrs. Alden recorded the warranty deed conveyance of 17 Church Street from Rosemary Alden to Lawrence and Dawn Quintal. This conveyance was made "Subject to easement of record for the use of the parking lot on the premises."
Mrs. Alden asserts that during negotiations for the sale, she made it clear to the Defendants that she wished to maintain the Funeral Home's ability to use the parking lot on 17 Church Street and would not sell the property otherwise. (Tr. 6/30/05 at 20.) She claims that Mr. Quintal only wanted to use the lot to park his personal vehicles as he had done while as a tenant. (Tr. 8/18/05 at 123.) On the other hand, Mr. Quintal asserts that he did not understand the extent of the easement. Mr. Quintal claims Mrs. Alden agreed to sell the property to the Defendants for the fair appraisal amount. (Tr. 7/27/05 at 38-39.) The appraisal obtained by Mrs. Alden valued the property at $126,000, but it did not make any mention of an easement on the property. Mr. Quintal claims that the appraisal amount would have been less if it had taken into consideration the easement Mrs. Alden subsequently placed on the property. Thus, according to the Defendants, the purchase price of $130,000.00 reflects that the Defendants did not receive any consideration for the easement over the land. Furthermore, Defendants point towards the Real Estate Disclosure form and its failure to identify any easements as evidence that Mr. Quintal did not recognize or understand the rights or obligations relating to this particular easement.
After the sale of the property, Mr. Quintal constructed at the back of his lot a wooden fence that extended out onto the easement area, despite the recorded easement. The fence removed approximately 235 square feet from the easement area, including a grate in the ground, as well as a buffer zone of mulch and vegetation that had been formed at the edge of the pavement.[2] Furthermore, in the winter of 2004, Defendants installed two cement curbstones in the parking lot, without getting permission from either Mrs. Alden or the Funeral Home. One of the curbstones was installed at an angle, and the second was placed approximately five feet from the fence, further reducing the available space for parking. Plaintiff also asserts that Defendants engaged in other conduct designed to disrupt Plaintiff's use of the easement for the Funeral Home. Plaintiff claims that Defendants (a) placed on the lot a basketball hoop that was used by Defendants' children during the Funeral Home's business hours; (b) placed in the easement area debris, pink flamingos, a green skull, and floral arrangements from a competitor's funeral parlor, all in view of the Funeral Parlor's patrons; (c) parked at an angle from the curbstones in a manner that reduced the Funeral Home's parking area; (d) interfered with the removal of the snow from the easement and (e) installed a spotlight that shone directly into the Funeral Home. In response to these actions, on March 24, 2005, Mrs. Alden filed a complaint seeking injunctive relief from this Court to discontinue the Defendants' interference with the easement.
Contrary to the Plaintiff's assertions, the Defendants maintain that their right to quiet enjoyment of the land has been substantially interfered with by the Plaintiff. Defendants claim that at the time the easement was filed, the only access the Defendants had to the easement area was by crossing over Plaintiff's land on 18 Baker Street. While the Defendants subsequently built a driveway over their property that connects Church Street to the easement area, at the time of the sale of the property and granting of the easement, such access did not exist. According to the Defendants, on numerous occasions, the Plaintiff purposefully blocked the Defendants' access to the easement from Baker Street. Due to such conduct, on April 22, 2005, the Defendants filed a counterclaim against the Plaintiff seeking both injunctive and declaratory relief from this Court to prevent the Plaintiff from interfering with the Defendants' quiet use and enjoyment of their land.
 STANDARD OF REVIEW
The decision to grant injunctive relief is a matter entrusted to the sound discretion of the Court. Brown v. Amaral, 460 A.2d 7, 10 (R.I. 1983). When this Court determines whether to grant injunctive relief, it must consider whether the moving party "(1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo." Pucino v. Uttley, 785 A.2d 183, 186 (R.I. 2001) (citing Iggy'sDoughboys, Inc. v. Giroux, 729 A.2d 701, 705 (R.I. 1999)). The moving party is not required to demonstrate a certainty of success for the Court to find that the party has a reasonable likelihood of success on the merits; rather, the party seeking the injunctive relief need only make out a prima facie case. DiDonato v. Kennedy, 822 A.2d 179, 181 (R.I. 2003) (citing Fund for Community Progress v. United Way of SoutheasternNew England, 695 A.2d 517, 521 (R.I. 1997)). Furthermore,
 "in considering the equities, the hearing justice should bear in mind that `the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold the matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered.'"
Fund for Community Progress, 695 A.2d at 521 (quoting Coolbeth v.Berberian, 313 A.2d 656, 660 (1974)).
Similarly, the decision to issue a declaratory judgment also lies within the trial justice's broad discretion. Cruz v. Wausau Ins. Co.,866 A.2d 1237, 1240 (R.I. 2005); Sullivan v. Chafee, 703 A.2d 748, 751
(R.I. 1997) (citing Woonsocket Teachers' Guild Local Union 951 v.Woonsocket Sch. Comm., 694 A.2d 727, 729 (R.I. 1997)). "In issuing a declaratory judgment, a trial judge makes all findings of fact without a jury." Fleet National Bank, Trustee v. 175 Post Road, LLC., 851 A.2d 267,273 (R.I. 2004) (quoting Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782
(R.I. 2000)). The Uniform Declaratory Judgments Act, G.L. 1956 § 9-30-1
et seq., grants the Superior Court "power to declare rights, status, and other legal relations." Furthermore, the Superior Court may grant additional affirmative relief "based on the declaratory judgment `whenever necessary or proper' provided subsequent `supplementary proceedings' are brought pursuant thereto." Capital Properties, Inc. v.State, 749 A.2d 1069, 1080 (R.I. 1999) (citing §§ 9-30-8, 9-30-12; Sousav. Langlois, 97 R.I. 196, 199, 196 A.2d 838, 841 (1964)).
 ANALYSIS A) Defendants' Request for Relief
The Defendants have filed a Counterclaim to Plaintiff's Complaint and come before this Court requesting injunctive and declaratory relief seeking this Court to enjoin Plaintiff from interfering with the quiet use and enjoyment of their land and that the easement be declared invalid. As set forth in the decision below, this Court finds that the Defendants have not satisfied the requisite elements to obtain their sought-after relief and therefore denies the requested injunction.
1) Likelihood of success on the merits
In order to obtain injunctive relief from this Court, a party must first establish that it is reasonably likely to succeed on the merits of its claim. Fund for Community Progress, 695 A.2d at 521. Here, Defendants aver that they will succeed on the merits of their claim because (1) the easement is void for lack of consideration; (2) Defendants were fraudulently induced into buying the property subject to the easement; (3) the easement is ambiguous and thus extrinsic evidence may be used to show the parties' intentions; and (4) the easement is invalid due to Plaintiff's inability to convey it. Upon review of the evidence before it, this Court finds that the Defendants have not successfully demonstrated they will succeed on the merits of their complaint under any of the above arguments.
a. Consideration
The Defendants will not succeed with their argument that the easement was invalid due to lack of consideration. The property at 17 Church Street had been appraised to be worth $126,000, but that appraisal did not take into account that the property would be burdened by an easement. Mr. and Mrs. Quintal assert that the fact they paid $130,000 for the property demonstrates that the easement portion of their land was taken for no consideration in return.[3] Defendants argue that the granting of the easement was a contract that required consideration. SeeRhode Island Five v. Medical Associates, 668 A.2d 1250, 1253 (R.I. 1996). Therefore, according to the Defendants, when the easement was placed on their property without their receipt of any consideration, the contract for the easement was void.
However, the defense of lack of consideration is unavailable to the Defendants here. Under Rule 8(c) of the Rhode Island Rules of Civil Procedure, "In pleading to a preceding pleading, a party shall set forth . . . failure of consideration . . . and any other matter constituting an avoidance or affirmative defense." A party who fails to affirmatively plead failure of consideration waives the defense. Rhode Island HospitalTrust Nat'l Bank v. DeBeru, 553 A.2d 544, 547 (R.I. 1989). After reviewing the Answer and Counterclaims of the Defendants, this Court finds that Defendants have not pled failure of consideration.[4] This Court is mindful that under Rule 8(a) of the Rhode Island Rules of Civil Procedure, a pleading requires only "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." However, even this minimal requirement has not been met, and there is nothing in the record to indicate to this Court that the Defendants had previously asserted the defense of lack of consideration. As such, the defense is waived, and it therefore cannot be used to demonstrate that the Defendants will succeed on the merits of their claim.
b. Fraud
Similarly, the defense of fraud is also unavailable to the Defendants. Defendants assert that the actions leading up to the sale indicate that Plaintiff fraudulently induced the Defendants to pay more than a fair price for their property. Once again, however, Rule 8(c) prevents the Defendants from using that defense at this juncture. According to Rule 8(c), fraud is a defense that must be pled affirmatively. If an affirmative defense is not pleaded affirmatively, it is waived. Duquettev. Godbout, 416 A.2d 669, 670 (R.I. 1980). After review of the pleadings, this Court finds that the Defendants have failed to plead the defense of fraud and therefore, such defense is waived. Defendants, thus, cannot rely on fraudulent inducement as evidence that they will be successful on the merits of their claim against the Plaintiff.
c. Extrinsic evidence of the parties' intentions
Defendants also argue that they will succeed on the merits of their complaint because extrinsic evidence demonstrates that the Defendants did not intend to bind themselves to the easement. Extrinsic evidence may be examined by the Court to determine the intention of the parties when the language employed in the grant of the easement is ambiguous or uncertain. Richards v. Halder, 853 A.2d 1206, 1210 (R.I. 2004) (citingWaterman v. Waterman, 93 R.I. 344, 349, 175 A.2d 291, 294 (1961);Gonsalves v. DaSilva, 76 R.I. 474, 477, 72 A.2d 227, 229 (1950); FirstBaptist Society v. Wetherell, 34 R.I. 155, 157-58, 82 A. 1061, 1062
(1912)). "In determining whether an agreement is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual language." W.P. Assocs. V. Forcier, Inc.,637 A.2d 353, 356 (R.I. 1994) (citing Antone v. Vickers, 610 A.2d 120, 123
(R.I. 1992)). Ambiguity exists only when the easement is reasonably and clearly susceptible to more than one interpretation. See id. (citingGustafson v. Max Fish Plumbing Heating Co., 622 A.2d 450, 452 (R.I. 1993); Nelson v. Ptaszek, 505 A.2d 1141, 1143 (R.I. 1986)). According to the Defendants, the easement at issue here is ambiguous because it gives both the Grantor and Grantee the right to park vehicles in the easement area and does not define the number of vehicles each party is permitted to park. Defendants argue that the rights of each are not specific enough to be enforced and as such, the easement is ambiguous.
The Court finds that the language in the easement is ambiguous. The easement gives the Grantee (Plaintiff) the right to "access the area by foot or by motor vehicle and . . . to . . . park [her] motor vehicles in the easement area." The easement provides no additional information regarding the Grantor's intended extent of use of the easement. SeeRichards, 853 A.2d at 1210 (Court found easement was ambiguous when it granted a right of way but did not specify extent of the use of the easement). Therefore, without additional information, the easement is clearly susceptible to more than one interpretation — it is unclear how many vehicles the Plaintiff is allowed to park on the easement and to what extent her vehicles can inhibit the Defendants' use of the land. As the easement is ambiguous, this Court may look to extrinsic evidence in order to determine the parties' intentions regarding this easement.Waterman, 93 R.I. at 349, 175 A.2d at 294.
Upon review of the extrinsic evidence, this Court finds that the Defendants have not demonstrated that they will likely succeed on the merits of their claim. In Richards, the defendant had purchased his home with an understanding of the limitations on his easement and had used the easement in that prescribed manner for a number of years. Richards,853 A.2d at 1210. The Court found that where the party had understood the extent of the use of the easement when he purchased his land and had used it in such a manner, it was not in error for the court below to prevent the party from later challenging the easement simply because of alleged ambiguous language.[5] Similarly here, the Defendants had knowledge of the easement and the extent of its permissible use when they purchased the property. Mr. Quintal's testimony indicates that when the parties were negotiating the purchase of the house, he discussed the terms of the easement with Mrs. Alden and understood what the Plaintiff desired. He testified that during sale negotiations, "I said, . . . `it will work out good, because we can give each other easements where I can cross your property to get to mine, and you guys can use it for calling hours and funerals. . . .'" (Tr. 8/18/05 at 93.) Furthermore, Mr. Quintal had worked at the Funeral Home for a number of years and had personal knowledge that the easement area was used to park cars during funerals. Even after Defendants purchased their lot, they continued to allow the Funeral Home to use the easement area for such purposes, further demonstrating Mr. Quintal's knowledge of the easement. Therefore, as inRichards, while the Court will look to the extrinsic evidence if the language in the easement is ambiguous, it will not declare that the easement fails when the burdened party both understood and has followed the easement. Therefore, even with the aid of extrinsic evidence to explain their intentions, the Defendants have failed to demonstrate that they will be successful on the merits of their claim.
d. Plaintiff's authority to grant the easement
Defendants finally assert that they will succeed on the merits of their complaint because Mrs. Alden had no power to grant the easement to the Funeral Home. Defendants argue that because Mrs. Alden granted the easement after she had already signed the Purchase and Sales Agreement ("PS") to sell 17 Church Street, she had only equitable title to the property and therefore did not have the requisite title to burden the property with an easement. As this Court has not been made aware of any law from this jurisdiction addressing the specific issue of whether a property owner who has already signed a PS to sell the property can grant an easement over the property prior to the closing, it is free to look towards other jurisdictions that have addressed this issue.
Rhode Island has long followed the doctrine of equitable conversion. "This court has held that equitable conversion occurs after there has been a purchase-and-sale agreement, vesting equitable title to the land involved in the vendee." Grant v. Briskin, 603 A.2d 324, 328 (R.I. 1992) (citing George v. Oakhurst Realty, Inc., 414 A.2d 471, 473 (R.I. 1980)). "The vendee in an executory contract for sale of land becomes the equitable owner of the same, the vendor holding legal title merely as security for the purchase price." Id. (quoting Jakober v. E.M. Loew'sCapitol Theatre, Inc., 107 R.I. 104, 110, 265 A.2d 429, 433 (1970)). However, although Rhode Island has adopted the doctrine of equitable conversion, our courts have articulated that under certain circumstances a party may still have the ability to burden a portion of the property even after the PS has been executed. See Grant, 603 A.2d 324. InGrant, a purchaser had entered into a PS to buy a certain piece of property. At that juncture, the party was vested with equitable title under the doctrine of equitable conversion. Before the purchaser received legal title, he executed a lease agreement to a third party after receiving permission to do so from the legal title holder. Id. at 329. The Court held that the lessor, "as an equitable owner, coupled with oral permission it received to enter into the lease, possessed the authority necessary to enter into a valid binding lease, especially since the [lessees] were aware of the pending sale of the premises. . . ." Id.
This court finds Grant analogous to the present matter. In Grant, the permission of the legal title holder was required for the equitable title holder to burden the property. Id at 326. Here, the party that encumbered the property was not the equitable title holder; rather it was Mrs. Alden, the vendor who still possessed the legal title over the property.Grant may be interpreted to stand for the proposition that only the legal title holder may grant permission to burden the property. If that is correct, then Plaintiff's execution of an easement here was clearly valid as she was the party with the legal title. Furthermore, even if the holding in Grant does not give the legal title holder absolute power to encumber the property, but rather stands for the rule that permission of both the equitable and legal title holder is required, the facts here satisfy that test as well. In Grant, the party with equitable title was given the oral permission of the legal title holder to lease the property. In the present matter, this Court finds that the equitable owner, the Defendants gave permission to encumber the property with an easement to the Plaintiff, the legal title holder. The PS signed by the Defendants clearly states that "Title shall be further subject to an exclusive easement for the benefit of William J. Smith Son, Inc. to use the paved parking lot on the Premises." This Court finds that this language is analogous to permission from the equitable owners to allow the legal title holder, Plaintiff, to execute the easement that was referred to. As such, under Grant, when permission is given by a title holder to burden the property after equitable conversion occurs, the other title holder has the authority to do so: therefore, here Mrs. Alden had the power to execute the easement over the parking area.
Similarly, this Court finds that the language in the PS referencing the easement prevents the Defendants from now challenging its validity. Our Supreme Court has held that "public policy also operates against unjust enrichment to a party, especially when that party has entered into an agreement with knowledge of the facts of which he complains at a later time." Id at 329. Furthermore, this Court is persuaded by the reasoning set forth in Coudert v. Sayre, 19 A. 190 (N.J. Ch. 1890). In that case, the plaintiff purchaser had placed covenants in the sales contract which restricted his ability to establish certain types of businesses on the property. These restrictions were subsequently placed in the buyer's deed. When the purchaser thereafter sought to have the covenants declared to be without force, the court refused. The court declared that the buyer was given the exact title to which the contract purported to offer and the deed did not contain any additional restrictions. Id at 191. The buyer bargained for a title that was encumbered with the covenants and received exactly what he bargained for. Id. Likewise, the Defendants here received what they contracted for. The PS which they signed promised that the Plaintiff would sell them title that was burdened by an easement. The deed that Defendants received contained that encumbrance, and therefore they should not be able to now free themselves of it when they had knowledge that an easement would be placed on the property when they signed the PS.[6]
In contrast to the above analysis, Defendants urge this Court to adopt the position taken by the Supreme Court of Wyoming in Hollabaugh v.Kolbet, 604 P.2d 1359 (Wyo. 1980). In that case, the purchasers had entered into a contract for the sale of the property, and thereafter, the sellers attempted to grant an easement over the property to a third party. The court held that "The only person who may grant a permanent easement is the owner of the land in fee simple, or a person with a power of disposal of the fee." Id. at 1363. The court stated that once a seller enters into a contract to convey property, it does not have the authority to grant an easement upon the land. Id. Once the contract for the sale of land is entered, prior to conveyance of the legal title at closing, "the vendee is treated as the beneficial owner of the land, and the vendor as owner of the purchase money, and the vendor becomes, as to the land, a trustee for the vendee. . . ." Id. (citing Baldwin v. McDonald,24 Wyo. 108, 156 P. 27, 35 (1916)). However, this Court finds Hollabaugh
distinguishable from the matter here, and it does not establish that the Defendants will likely be successful on the merits of their claim.
Unlike the PS executed between the Plaintiff and Defendants, the PS in Hollabaugh made no reference to the easement that the sellers later wished to convey. Hollabaugh, 604 P.2d at 1162. Limiting the Hollabaugh
holding to its specific facts, the Court interprets that case to stand for the rule that a seller who only has legal title cannot convey an easement over the property that was not mentioned in the sales contract. In fact, our Supreme Court has established the above rule in Adams v.United Developers, Inc., 121 R.I. 177, 179. 397 A.2d 503, 505 (1979). There the Court held that where an easement is not specifically referred to in the PS, the vendor is contractually bound to deliver a deed free from such encumbrances. Adams, 121 R.I. at 179, 397 A.2d at 505 (citingMoulton v. Chafee, 22 F. 26, 27 (C.C.D.R.I. 1884)). Here the PS specifically mentioned the easement to the Funeral Home. As discussed, because the Defendants had knowledge of the restrictions that were to be placed on their property prior to closing and because they received exactly what they had agreed to buy in the PS, they cannot now release themselves from the easement. Therefore, the Court finds that under the facts of this case, the Plaintiff had the authority to grant the easement over the parking area and thus, Defendants have failed to demonstrate that they will succeed on the merits of their claim.
2) Irreparable harm and balance of burdens
Defendants have failed to demonstrate that they will succeed on the merits of their complaint, and therefore, their request for injunctive relief may be denied. However, this Court finds that even if the Defendants were able to demonstrate a likelihood of success on the merits of their complaint, they have failed to establish that the remaining requisites for entitlement to injunctive relief have been satisfied. In order for this Court to grant Defendants' injunctive relief, Defendants are required to establish that they will suffer irreparable harm without the requested relief. Pucino, 785 A.2d at 186. "The moving party must demonstrate that rights in question will be irreparably injured or endangered if the injunction is not issued. . . ." School Committee ofCity of Pawtucket v. Pawtucket Teachers' Alliance Local No. 930,365 A.2d 499, 501 (R.I. 1976). Additionally, the Court must be persuaded that the balance of equities lies in favor of the Defendant. When balancing the equities, the Court should consider "the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." Fund For Community Progress,695 A.2d at 521. Here, Defendants have not convinced this Court that if the injunction is denied, they will suffer an irreparable harm that outweighs the burden Plaintiff will suffer were the Defendants' requested relief granted.
In Pucino, the Court granted a preliminary injunction for the plaintiffs when they demonstrated that they would suffer an irreparable harm from defendants' use of their land and where they showed that they would suffer from a greater burden than the defendants if the injunction were not granted. See Pucino, 785 A.2d 183. There the plaintiffs had leased the property to a towing business that used the property for a garage and as an area to back-up and store cars for the business. The defendants had known of and acquiesced to this use for a number of years. Id. at 185. The court held that interference with this use was a tremendous burden on the continuing business and commercial goodwill of the plaintiff. These factors, along with the defendants' prior acquiescence of the use, balanced the burden of hardships in favor of the plaintiffs. Id. at 188. Similarly, Mrs. Alden will suffer an irreparable injury to her business if the injunction is granted for the Defendants. Mrs. Alden would be denied the ability to park her vehicles, and such lack of parking would injure her business, as well as the good will towards the Funeral Home. Furthermore, Defendants have lived with Mrs. Alden using the easement area since the time they had purchased the house. As in Pucino, this Court finds that because the Plaintiff will suffer a burden to her business if Defendants' requested injunction is granted and because the Defendants have endured the Plaintiff's use for a number of years, Defendants have not demonstrated that the harm they may suffer outweighs the burden that will be felt by Mrs. Alden were the Court to grant the Quintals' requested injunction. Therefore, this Court holds that because the requisite elements for granting injunctive relief have not been established, the Defendants' request is denied.
3) Maintaining the status quo
Even if Defendants were able to persuade the Court that they will suffer an irreparable harm that outweighs the burden on the Plaintiff if the Defendants' requested injunction is granted, before issuing the injunction the Court must look to the fourth factor used to decide whether injunctive relief should be granted — whether the injunction will maintain the status quo. Iggy's Doughboys, Inc. v. Giroux, 729 A.2d 71, 705
(R.I. 1999). In Iggy's, the court granted an injunction that would prevent the defendant from opening a neighboring take-out window service in competition with the plaintiff. Id. at 706. The injunction was granted because it would maintain the status quo, as the defendant did not currently have a take out window, and its present business would not be interfered with until there was a determination of the merits of the case. Id. Similarly, here the status quo will be maintained only if the Defendants' requested injunction for quiet enjoyment of their property is denied. The Plaintiff currently uses the alleged easement area for her business and would be harmed if this use was suddenly taken away. In order to prevent this harm and to maintain the status quo, the Plaintiff must be allowed to continue this use without interference from the Defendants until the merits of the suit are ruled upon by a court. Therefore, because the granting of the injunction will not maintain the status quo, this Court denies the Defendants' requested injunction for quiet enjoyment over the easement area.
 B) Plaintiff's Request for Injunctive Relief
Through her Complaint, Plaintiff asks this Court for injunctive relief under which Defendants would be ordered to (1) remove the concrete barriers and other personal items from the easement area; (2) cease from crossing over Plaintiff's Baker Street Lot to gain access to the easement; and (3) cease from participating in any activities in the easement area that will interfere with the operation of the Funeral Home. In order for this Court to grant Plaintiff her desired remedy, the four elements articulated in Pucino must be satisfied.[7]785 A.2d at 186. After examining the evidence before it, this Court finds that the Plaintiff has established all of the above prerequisites and thus, this Court grants her request for injunctive relief.
This Court has already determined that Mrs. Alden will suffer an irreparable harm and the balance of burdens weighs in her favor. "Prospective damage to a business's good will and reputation `is precisely the type of irreparable injury for which an injunction is appropriate.'" Iggy's, 729 A.2d at 705 (quoting Fund for CommunityProgress, 695 A.2d at 523). Here, Plaintiff's Funeral Home will be injured by Defendants' continued disruptive use of the easement. The loss of the parking spaces caused by the cement blocks, fence, and debris, as well as the interference with the actual business operation, such as by the displaying of a competitor's flowers and the shining of light directly into the Funeral Home, clearly indicate that without an injunction, the Funeral Home will suffer irreparable harm to its business' good will and reputation. Furthermore, as the Defendants have not demonstrated that they will suffer substantial harm in comparison to the damage that such behavior will burden the Plaintiff with, the balance of equities weighs in favor of the Plaintiff.
Similarly, if this Court were to grant the Plaintiff injunctive relief, it would be maintaining the status quo. Even prior to the time of the sale and through the present, Plaintiff has been using the easement area for the Funeral Home (i.e. parking and moving vehicles during services). Injunctive relief for the Plaintiff would prevent the Defendants from interfering with this use of the easement area and allow Plaintiff to continue to use the easement for its business in a manner to which it has been accustomed. See Frenchtown Five, L.L.C. v. Vanikiotis,863 A.2d 1279 (R.I. 2004) (Injunction granted to prevent interference with business' parking spaces).
Furthermore, Plaintiff has demonstrated that she will likely succeed on the merits of her claim. Plaintiff need not prove her claim at the preliminary injunction stage, but need only make out a prima facie case.Coolbeth v. Berberian, 112 R.I. 558, 566, 313 A.2d 565, 660 (1974). Plaintiff had the authority to execute the easement in favor of her Funeral Home. The easement is valid and the rights it provides must be recognized. The rights to use the easement for the Funeral Home will likely be found to have been substantially interfered with, as this Court has found that Plaintiff is suffering irreparable harm due to the Defendants' activities. Therefore, Plaintiff is likely to succeed on the merits of her complaint.
Plaintiff has established that without the injunction she will suffer irreparable harm, the injunction will maintain the status quo, the balance of equities weighs in her favor, and she is likely to succeed on the merits of her complaint. Therefore, because she has established all of the requisite elements, this Court grants Plaintiff injunctive relief to prevent Defendants from interfering with Plaintiff's use of the parking area for the Funeral Home.
 REMEDY
"Equity is a flexible concept which involves rejection of rigid rules to accomplish what is fair and just in a particular situation." In reMarker, 142 B.R. 734, 742 (1992). Equity attempts to strike a balance of convenience between litigants while allowing the Court to take into account the entirety of the circumstances. See Wheeling Steel Corp. v.American Rolling Mill Co., 82 F.2d 97, 100 (6th Cir. 1936); MuscodaBridge Co. v. Worden-Allen Co., 196 Wis. 76, 97, 219 N.W. 428, 437
(1928). Therefore, this Court must fashion injunctive relief that is just and equitable, yet maintains some flexibility in attempting to adopt a resolution responsive to the circumstances and intent of the parties. It follows that although this Plaintiff is entitled to injunctive relief, this Court need not order the specific relief as requested. "Balancing of equities and hardships may lead the court to grant some equitable relief but not as much as the plaintiff might want. Put differently, the court has the power to measure, shape or tailor relief to fit its view of the balance of equities and hardships." 1 Dan B. Dobbs, Law of Remedies § 2.4(1) (2d ed. 1993). Understanding the practical effect of the Court's decision, the strained relationship between the parties and the close proximity of the parties' property, the Court believes its interpretation of Plaintiff's easement requires the following implementation to best protect the rights and interest of the parties.[8]
This Court orders that Defendants shall remove the fence from the easement area and relocate it to where it was originally located when the Defendants purchased the property. Defendants are permitted two parking spaces at the corner of the easement area closest to their driveway that connects their property to Church Street. Warren zoning laws provide that the minimum dimensions of a standard parking space are 9 feet in width by 18 feet in length. Warren Zoning Ordinance art. XVIII, § 32-106 (1994). Using those objective measurements, Defendants can maintain a parking area 18 feet in depth by 18 feet in width commencing from the point of the relocated fence, an area which Defendants are allowed to fence in. The Plaintiff shall have access over the remaining paved area to use for the parking and moving of vehicles for the Funeral Home business consistent with the Court's recognition of her easement.
In light of this reconfigured easement area, Defendants shall remove all concrete barriers and any other personal property from this area. Defendants are further restrained from directing lighting fixtures beyond the boundaries of their property and shall cease from crossing over Plaintiff's Baker Street Lot upon establishment of the 18 feet by 18 feet parking area for Defendants' use.
 CONCLUSION
As to Plaintiff's request for declaratory relief, the Court finds that the Plaintiff's creation of the easement was valid and that any ambiguity as to the scope of the easement is resolved by reference to the prior knowledge, use and acquiescence of the Defendants as described herein.
As to the competing requests for preliminary injunctive relief, the Plaintiff's request is granted to the extent described herein and the Defendants' request is denied.
[1] Catherine Tattrie is also the daughter of Plaintiff Rosemary Alden.
[2] The parties dispute the grate's function. Defendants contend that it is an old well while Plaintiff argues that it is a drain for the removal of run-off water from the lot. Defendants assert that the paved lot does not even run towards the grate, and thus it does not serve any drainage function.
[3] In Rhode Island Five v. Medical Associates, 668 A.2d 1250, 1254
(R.I. 1996), the court held that an offer to build a road and install utilities was not sufficient consideration for the granting of the easement. Defendants argue that Plaintiff's promise to make improvements and repairs to the easement similarly should not be held as sufficient consideration.
[4] This Court must look beyond the Answer of the Defendants and is required to also examine any counterclaims to determine if the affirmative defense was pleaded. "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Rule 8(c) Rhode Island Rules of Civil Procedure.
[5] In Richards, the defendant had purchased a piece of property giving him a "right of way" over the seller's land. The easement had been used as a foot path since it had been created in 1948, and defendant continued to use it as such after he purchased his home in 1995. In 2001, defendant attempted to drive and park vehicles on the easement area. The Court said that while although the language, "right of way," standing by itself was ambiguous, defendant could not use the easement in the manner which he desired when he had full knowledge of the previous use of the easement and had in fact used it in that manner since he had purchased the home.
[6] In addition, in George v. Oakhurst, 414 A.2d 471, 473 (R.I. 1980), the Court held that "a third party who purchases such land with notice of the vendee's interest therein under a preexisting executory purchase-and-sale agreement takes title subject to such interest." Applying that rule here, the Funeral Home would take its easement subject to the interest held by the Defendants after they had signed the PS Agreement. However, the Defendants' PS Agreement stated that they would take title subject to the easement. Therefore, Defendants cannot claim to have a clean title and rights superior to that of the easement holder.
[7] In determining whether to grant injunctive relief, court looks to see if moving party (1) has demonstrated a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo.
[8] "Injunctions may be granted to prevent violation of rights or to restore the plaintiff to rights that have already been violated . . . [and may be] denied in individual cases when the judge concludes that some other remedy ought to be used instead." Dobbs, supra, § 2.9 (2).